UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MARSHALL WELTON, et al., | ) ) | |
| Defendants, | ) ) | No. 1:18-cv-01098-JMS-DLP |
| MARSHALL WELTON, et al., | ) ) | |
| Counter Claimants, | ) ) | |
| v. | ) ) | |
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., et al., | ) ) ) | |
| Counter Defendants. | ) | |

## ORDER ON PROTECTIVE ORDER

This matter comes before the Court on the Defendants' Motion for Protective Order (Dkt. 176). The Defendants filed this Motion on March 11, 2019, requesting that the Court enter a protective order requiring the Plaintiffs to seek leave to serve additional interrogatories and submit a verified statement with each new request for production. The Defendants are also requesting to stay all discovery related to the personal financial information of Marshall Welton and Natalia Villanueva until after the Court has ruled on Defendants' forthcoming motion for summary judgment. [Dkt. 177 at 28.] Fair Housing Center of Central Indiana, Inc. ("FHCCI"),

1

in its capacity as Counterclaim Defendant, filed a response brief on March 25, 2019. The Plaintiffs filed their response on March 26, 2019, and the Defendants filed a reply on April 1, 2019.

As an initial matter, the Court notes that the Plaintiffs' March 26, 2019 response is untimely pursuant to Southern District of Indiana Local Rule 7-1(c)(2)(A), and Plaintiffs did not seek leave to file their response after the deadline had passed. Pursuant to Local Rule 7-1(c)(4), the Court may summarily rule on a motion if an opposing party does not file a response within the deadline. Plaintiffs' counsel is reminded to review the Southern District of Indiana's Local Rules and advised that any future untimely responses may result in the Court summarily ruling.

## I.     Background

This action was filed on April 10, 2018, and since that time this case has been plagued with numerous discovery disputes. On December 18, 2018, the Undersigned conducted a discovery conference to address the Defendants' concern regarding the number of interrogatories the Plaintiffs had served on the Defendants. During that conference, the Court acknowledged that discovery would be extensive by virtue of the number of parties, claims, and counterclaims involved in the case.  In an effort to strike a balance between adequate discovery and keeping litigation costs down, the Magistrate Judge required the Defendants to answer fifty-six (56) of the Plaintiffs' general interrogatories.  The parties also agreed that the Plaintiffs would be allowed to serve five (5) specific interrogatories for each individual Plaintiff.

Once a party served its five specific interrogatories, it would be required to obtain leave of court to serve additional interrogatories. (Pls.' Mot. for Order Directing Answer to Interrog.; [Dkt. 137 at 1-2]) ("at yesterday's discovery conference the Court directed that defendants will answer interrogatories 28-56, that each plaintiff will have an additional five interrogatories, and that plaintiffs may submit additional interrogatories for preclearance by the Court."); (Defs.' Br. in Opp'n to Pls.' Mot. to Compel; [Dkt. 201 at 2]) ("It is Defendants' understanding that the Court ruled that out of the Interrogatories Plaintiffs had served, Defendants were only required to respond up to Interrogatory No. 56. Then, each Plaintiff would have 5 additional interrogatories to address the unique circumstances surrounding his or her claims.").

Here, the Defendants argue that since that December discovery conference, the Plaintiffs have drastically inflated the Defendants' discovery costs and unnecessarily stalled this litigation by serving 183 interrogatories, 231 requests for production, and 98 requests for admission, which prompted the Defendants to request a protective order to limit discovery. [Dkt. 27 at 27.]

## II.   Legal Standard

Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial. 8 Wright & Miller, *Federal Practice and Procedure* § 2001, at 44-45 (2d ed. 1994). To effectuate these purposes, the federal discovery rules are liberally construed. *Spier v. Home Ins. Co.*, 404 F.2d 896 (7th Cir. 1968). See also 8

Wright & Miller, *Federal Practice and Procedure* § 2001, at 44 (2d ed. 1994). However, the Court must restrict the frequency and extent of discovery otherwise permitted under the rules if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Magistrate judges enjoy extremely broad discretion in controlling discovery. *Jones v. City of Elkhart, Ind.,* 737 F.3d 1107, 1115 (7th Cir. 2013).

## III. Discussion

The Defendants have requested that the Court enter a protective order (1) requiring Plaintiffs to seek leave of the Court before serving additional Interrogatories and Requests for Production; (2) requiring Plaintiffs to submit a verified statement with each new request for production that states they have reviewed Defendants' previous productions, and the new request does not seek documents already contained in Defendants' previous productions, and (3) staying the production of all discovery related to the personal financial information of Marshall Welton and Natalia Villanueva until after the Court has ruled on Defendants' forthcoming motion for summary judgment. [Dkt. 177 at 28.] The Undersigned will address each argument in turn.

### A. Interrogatories

Defendants seek a protective order preventing Plaintiffs from serving any additional interrogatories without leave of the Court. Defendants assert that, when

4

accounting for subparts, the Plaintiffs have served 183 interrogatories and that the

Plaintiffs' use of interrogatories has become excessive, abusive, and overly

burdensome and disregards the Magistrate Judge's December 18, 2018 discovery

directive.[1] In response, the Plaintiffs maintain that they have only served 96

interrogatories,[2] and that their use of interrogatories complies with the discovery

rules and the Magistrate Judge's December 2018 directive.

      The Court will first address and determine the number of interrogatories that

have been served and then discuss whether Plaintiffs' interrogatory practice

exceeds the boundaries set by the Magistrate Judge and the discovery rules.

### i.   Number of Interrogatories

      Federal Rule of Civil Procedure 33 governs the use of interrogatories. Rule

33(a)(1) expressly forbids a party from serving more than 25 interrogatories upon

another party "[w]ithout leave of court or written stipulation."[3] "This limitation is

not meant 'to prevent needed discovery, but to provide some judicial scrutiny before

parties make potentially excessive use of this discovery device.'" *Illiana Surgery &*

*Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07 CV 3, 2008 WL 5111358, at *2

(N.D. Ind. Dec. 1, 2008) citing (8A Wright & Miller, *Federal Practice and Procedure*

---

[1] Defendants also generally argue that many of Plaintiffs' discovery requests do not seek relevant information. However, except for Interrogatories 87 and 89, the Defendants have already answered the interrogatories they identify as irrelevant. The Court will not address the relevancy of the interrogatories that have already been answered, and for the reasons set forth in this Order, the Court does not find it necessary to address the relevancy of Interrogatories 87 and 89 at this time.

[2] Plaintiffs' Brief argues that they have served 95 interrogatories on page 10, and 96 interrogatories on page 15. [Dkt. 192.]

[3] Rule 33(a) was amended to include the numerical limit in 1993. The Advisory Committee Notes for the 1993 amendments further emphasize that "[t]he purpose of this revision [was] to reduce the frequency and increase the efficiency of interrogatory practice" since "the device can be costly and may be used as a means of harassment."

§ 2168.1, at 262 (2d ed. 1994) (quoting Advisory Committee Notes, 146 F.R.D. 401, 676). Moreover, this limit increases the efficiency of the interrogatory practice by forcing parties to make prudent and constructive use of their 25 written interrogatories. *Capacchione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 492 (W.D.N.C. 1998).

One issue that has arisen in implementing the numerical limit contained in Rule 33(a) is how interrogatories should be counted. This Court and other district courts in this Circuit often follow the rule that each subpart of an interrogatory is treated as an individual interrogatory unless it is "logically or factually subsumed within and necessarily related to the primary question." *Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-cv-01020-RLY-MJD, 2013 WL 4777206, at *3 (S.D. Ind. Sept. 5, 2013) (citing *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 3829134, at *1 (N.D. Ill. June 30, 2005); *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)); *see Eckweiler v. NiSource, Inc.*, No. 2:17-CV-434-JTM-JEM, 2018 WL 6011872, at *3 (N.D. Ind. Nov. 16, 2018); *C & N Corp. v. Kane*, No. 12–C–0257, 2013 WL 74366, at *2 (E.D. Wis. Jan. 7, 2013). Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a) by rendering it meaningless, unless each subpart counts as a separate interrogatory. On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic. *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 443 (C.D. Cal. 1998). The Court has reviewed

Plaintiffs' interrogatories and determines that, when accounting for subparts, Plaintiffs have served 131 interrogatories.

### ii.   Burdensomeness of Plaintiffs' Interrogatory Practice

The Defendants argue that the Plaintiffs' interrogatories, no matter whether the number totals 96, 131, or 183, have become burdensome, excessive, and cumulative and request that this Court limit any further service of interrogatories without leave. The Plaintiffs assert that their discovery requests are necessary to their discovery strategy and comply with the Federal Rules.

When a party is confronted with what it believes to be an excessive number of interrogatories, the appropriate course of action is to either move for a protective order before answering any interrogatories or "answer up to the numerical limit and object to the remainder without answering." *Capacchione*, 182 F.R.D. at 493 n.4 (W.D.N.C. 1998) (citing 7 Moore's *Federal Practice* § 33.30[1]); *Paananen v. Cellco P'ship*, No. CO8-1042, 2009 WL 3327227, at *5 (W.D. Wash. 2009) ("[T]he best rule, and the one this Court applies here, is that a responding party must answer the first 25 interrogatories."). If a party, instead, decides to answer some or all of the allegedly excessive interrogatories, it waives its objection that the requesting party has violated Rule 33's limit on the number of interrogatories a party may serve. *Knit With v. Knitting Fever, Inc.,* 2010 WL 11474937, at *1 n.2 (E.D. Pa. Jan. 22, 2010) ("Notwithstanding [d]efendant's non-waiver statement, it remains established that if a party selectively answers interrogatories, it has waived its objections [under Rule 33(a)] as to the remaining interrogatories."); *Capacchione*, 182 F.R.D.

at 492 ("Yet, CMS, by responding to Interrogatories 21–25 without moving for a protective order, waived any objection on grounds of the twenty-interrogatory limit."); *Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104–05 (W.D.N.C. 1993) (finding that answering interrogatories in excess of the numerical limit constituted a waiver of an argument based on the number of allowable interrogatories).

Pursuant to the December 2018 discovery conference and the Court's January 2019 Order, [Dkt. 143], the Defendants agreed to answer Plaintiffs' Interrogatories 1–57, 60–63, and five (5) specific interrogatories from each Plaintiff. The Plaintiffs confirmed that the Defendants followed this agreed approach and responded to Interrogatories 1-57 and 60-63. [Dkt. 192 at 10.] Moreover, the Defendants have responded to additional written interrogatories, including Plaintiffs' Interrogatories 65–89. [*Id.*] If the Court takes the Plaintiffs' calculation, the Defendants have answered 91 and objected to only 4 written interrogatories.

Despite continuing to answer Plaintiffs' interrogatories, Defendants argue that responding to Plaintiffs' voluminous written interrogatories has caused them to incur enormous litigation costs and, therefore, seek a protective order that would require the Plaintiffs to seek leave of the Court to serve additional interrogatories. Relying on *St. Paul Fire and Marine Ins. Co. v. Birch*, 217 F.R.D. 288 (D. Mass. 2003), Plaintiffs maintain that their interrogatory practice (what the Court counts as 131 interrogatories) falls well below any cap set by the plain meaning of Rule 33(a)(1) and within the Magistrate Judge's December 18, 2018 directive. [Dkt. 192

at 15.] Thus, the Plaintiffs argue, granting the Defendants' request for a protective order would be an abuse of discretion.

In *St. Paul*, the court read the interrogatory limit to apply to individual parties on each side of the dispute, and not to each side in the aggregate. *Id.* at 289. Here, Plaintiffs seem to argue that each of the 12 Plaintiffs, pursuant to Rule 33, is entitled to propound 25 interrogatories to each of the Defendants. By this reasoning, because there are 11 Defendants in this matter, collectively, the Plaintiffs would be entitled to propound a total of 3,300 interrogatories in this case.

The Undersigned is not persuaded. This is an important case, but the scope of the litigation is not so broad that discovery should become disproportionate to the needs of the case. The Court approaches the issue of whether a party may serve more than 25 interrogatories on a case-by-case basis. *Duncan v. Paragon Publ'g, Inc.*, 204 F.R.D. 127, 128 (S.D. Ind. 2001). In *Duncan*, the plaintiffs sought leave to serve 99 interrogatories on the defendants, claiming the information sought could not be obtained from a more convenient source, the interrogatories were not unreasonably cumulative or duplicative, and the interrogatories would not serve as an annoyance or cause significant expense to the defendants. *Duncan*, 204 F.R.D. at 128. The defendants objected to the request, arguing that the plaintiffs sought to serve more than 178 interrogatories in total, the interrogatories were burdensome and oppressive, and the plaintiffs failed to make a particularized showing of need for the information. The court, agreeing with the defendants, granted the protective

order limiting the three plaintiffs to a "reasonable number of interrogatories not to exceed twenty-five." *Duncan*, 204 F.R.D. at 129.

The holding in *Duncan* is supported by one of the leading civil procedure treatises:

> The limitation on number of depositions ... speaks in terms of "sides" rather than parties. Because it frequently happens that a number of parties on the same side are represented by a single attorney and in that sense act in unison, this concept might be attractive in the interrogatory setting as well. In instances of legally related parties such as a parent corporation and its subsidiary, this could be particularly attractive. But the basic problem is more widespread. Consider, for example, a situation in which ten people injured in a bus crash sue the bus company in a single suit represented by the same lawyer. Should they be considered one party or ten for purposes of the interrogatory limitation? The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation.

Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1 at 261 (2d ed. 1994). Here, the Plaintiffs have been represented by the same group of attorneys since the inception of this lawsuit, jointly served numerous sets of interrogatories, and filed and responded to all motions jointly.

Moreover, Plaintiffs' interrogatory practice has disregarded the distinction between Individual Plaintiffs for which they once advocated. While each set of interrogatories is proclaimed to be submitted by an individual plaintiff, many interrogatories seek information for use by all plaintiffs. The most vivid example of this is Interrogatory 92, which is purported to be served by Plaintiff Palmero but

asks Defendants[4] to "supply *plaintiffs* with an accurate statement of the parameters of defendants' production . . ." [Dkt. 199-2 at 1] (emphasis added). Thus, it is evident that the Plaintiffs' previous position that each Individual Plaintiff should be allowed five additional interrogatories, which the Plaintiffs advocated for at the December 18, 2018 discovery conference, has been abandoned.

Rule 26(b)(2)(A) permits courts to alter the allowed number of interrogatories by order. Rule 26(b)(2)(C) requires the courts to "limit the frequency or extent of use of the discovery methods otherwise allowed . . . if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Based on the Court's review of the interrogatories, the Court concludes that Plaintiffs' interrogatory practice has surpassed the boundaries of both Rule 26 and the Magistrate Judge's December 18, 2018 directive. In essence, the Plaintiffs have divided the issues in this case into numerous subparts and then demanded that the Defendants identify witnesses and documents relevant to each subpart. The 131 interrogatories that strategy produced have become unduly cumulative and burdensome.

iii.     *Counterclaim-Defendant Fair Housing Center of Central Indiana, Inc.*

Fair Housing Center of Central Indiana, Inc. ("FHCCI") Counterclaim-Defendant argues that it should not be bound by this protective order in its capacity

---

[4] Plaintiffs have directed all interrogatories to Defendant Marshall Welton because he is a manager of all the Defendant LLCs.

as Counterclaim-Defendant because Defendants asserted three tort counterclaims against only FHCCI that concern a different set of facts and legal issues. The Court has recognized that FHCCI, as Counterclaim-Defendant, holds a distinct position from the individual plaintiffs and has permitted FHCCI to file a separate motion for summary judgment to raise its claims and counterclaim defenses that differ from those raised by the Individual Plaintiffs. [Dkt. 95 at 3.]

FHCCI argues that justice requires the Court to allow it to serve its own set of 25 interrogatories for its counterclaim defense. [Dkt. 191 at 8]. FHCCI maintains that in its Counterclaim-Defendant capacity it has served sixteen (16) interrogatories and has not reached the standard twenty-five (25) interrogatories.

Upon review for the purposes of this discovery dispute, the Court notes that the Individual Plaintiffs and Counterclaim-Defendant FHCCI have not consistently observed this distinction between the two groups when serving discovery. [Dkts. 199-3, 199-4, 199-5] It is clear that the Individual Plaintiffs have repeatedly served interrogatories that seek information relevant only to the counterclaims asserted against FHCCI. Furthermore, the Court has reviewed Counterclaim-Defendant FHCCI's interrogatories and determined that, when accounting for subparts, Counterclaim-Defendant FHCCI has served 27 interrogatories. Specifically, the Court identifies interrogatories 1–13, 81, 90–91, and 93–94 as attributable to Counterclaim-Defendant FHCCI.[5] Thus, when accounting for subparts these interrogatories exceed the limit of 25 for which FHCCI advocates.

---

[5] In FHCCI's response brief, it represents that it has served 16 interrogatories. However, it does not identify for the Court the 16 interrogatories it has served. Further, Defendants' reply accepts FHCCI

As of the filing of this brief, however, the Defendants had only answered 14 of Counterclaim-Defendant FHCCI's Interrogatories, but Interrogatories 90–91 and 93–94 had not been answered.[6] Accordingly, Defendants shall answer Interrogatories 90–91, 93, and the first two interrogatories contained in Interrogatory 94.

    iv.    *Conclusion Regarding Interrogatories*

Accordingly, Defendants' Motion for a protective order, as it relates to interrogatories, is **GRANTED**. Plaintiffs and Counterclaim-Defendants may not serve additional interrogatories without leave of court.

### B. Requests for Production

Next, Defendants ask the Court to enter a protective order preventing Plaintiffs from serving any additional requests for production without leave from the Court and requiring them to submit a verified statement with each new request for production that states they have reviewed Defendants' previous productions, and the new requests do not seek documents already contained in Defendants' previous productions. [Dkt. 177 at 28]. Plaintiffs argue that they should not be subject to a protective order regarding requests for production because each request is unique and serves a specific purpose.

Unlike interrogatories, requests for production are not subject to a numerical limit by the Rules of Civil Procedure. Magistrate judges in this circuit, however,

---

initial assertion that it has served 16 interrogatories, but Defendants also do not identify which interrogatories they believe are included to total 16.

[6] The Court reaches the number of interrogatories that have been answered by adding Interrogatory 81 to the 13 interrogatories FHCCI served in their first set of interrogatories.

frequently set limits on requests for production as a way to manage discovery effectively. *See e.g., Goings v. Jones*, No. 16-CV-00833-NJR-DGW, 2018 WL 2099877 at *7–8 (S.D. Ill. May 7, 2018) (upholding the magistrate judge's decision to limit the parties to 15 requests for production); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03–cv–680–SEB–WGH, 2011 WL 6012594 at *1 n. 1 (S.D. Ind. Dec. 1, 2011) (setting a presumptive limit of 40 requests for production). Requests must be limited, however, if the Court finds that the requests are "unreasonably cumulative or duplicative," or outside the scope of Rule 26(b). Fed. R. Civ. P. 26(b)(2)(C). In making this Rule 26 analysis the court must consider the "totality of the circumstances." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

Plaintiffs assert that they have propounded 126 requests for production, while Defendants argue that, because of the numerous subparts of their requests, the Plaintiffs have propounded 231 requests for production. In response to Plaintiffs' individual requests, Defendants represent that they have provided Plaintiffs with approximately 42 gigabytes ("GB") of data, which includes 62,178 pages of electronically stored information ("ESI"), 19,000 pages of scanned paper documents, and full access to Defendants' management databases for all 13,000 plus properties.

Plaintiffs argue that they should not be subject to a protective order regarding requests for production because despite the frequency, their requests seek relevant information and each request contains "at least one unique variable,

specifically inserted by the plaintiffs so that the request interacts with other discovery for the purpose of boxing in defendants." [Dkt. 192 at 21.]

Given the totality of the circumstances, Plaintiffs' approach to requests for production is no longer proportional to the needs of the case. Discovery "is not limitless," *Robinson Steel Co., Inc. v. Caterpillar, Inc.*, No. 2:10-cv-438-JTM-PRC, 2012 WL 5903769, at *1 (N.D. Ind. Nov. 21, 2012), and when the volume of requests for production becomes too cumulative the Court must set limits to manage the case. Fed. R. Civ. P. 26(b)(2)(C). Although Plaintiffs' requests are not identical to one another, they have become unreasonably cumulative. The "unique variables" included in each new set of requests may have the effect of narrowing and specifying Defendants' discovery response, but they also have the effect of driving up the cost and burden of litigation. Moreover, Plaintiffs' use of the "unique variables" to "box in" Defendants approach indicates that the real purpose of these requests is not to collect documents for inspection, but rather to discover Defendants' contentions about the documents.

A deposition is a less burdensome procedure for discovering this kind of information, and which has not been not been exhausted by the Plaintiffs. *Cf Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, No. 1:06-cv-01574-DFH-JMS, 2008 WL 11376577 at *5 (S.D. Ind. Mar. 21, 2008) (declining to compel compliance with a subpoena when "more direct, less burdensome methods for obtaining discovery" were available); *Duncan v. Paragon Publ'g., Inc.*, 204 F.R.D. 127, 129 (S.D. Ind. 2001) (granting defendant a protective order in part because information

plaintiffs sought was obtainable through a deposition and conducting written discovery and depositions would be cumulative). The Court finds that the Plaintiffs' use of requests for production has become unduly cumulative and burdensome. Accordingly, Defendants' request for a protective order requiring Plaintiffs to seek leave before submitting additional requests for production is **GRANTED**.

Plaintiffs will not, however, be required to submit a verified statement with each new request for production to the Court. Lawyers already have a duty to conduct discovery in good faith and in a rational, peaceful, and efficient manner. *Malibu Media, LLC v. Tashiro*, No. 1:13–cv–00205–WTL–MJD, 2015 WL 2371597 at *33 (S.D. Ind. May 18, 2015) (citing *Thompson v. Fajerstein*, No. 08 CV 3240, 2010 WL 4628515, at *5 (N.D. Ill. Nov. 8, 2010). A verified statement reaffirming this duty is unnecessary and duplicative. Accordingly, Defendants' request to require Plaintiffs to submit a verified statement with each new request for production is **DENIED.**

Counterclaim-Defendant FHCCI will also be subject to this protective order as is relates to requests for production. As was the case with interrogatories, FHCCI and Individual Plaintiffs have not maintained the distinction between groups for which FHCCI advocates. Requests for Admission 57–58 and 60–64 demonstrate this conduct. Each of the requests seeks documents that relate to Defendants' tort counterclaims asserted against FHCCI only. Again, because Plaintiffs and Counterclaim-Defendant FHCCI have not observed the distinction between the two

groups during the discovery process, the Court finds that it is necessary to enforce this protective order against both Plaintiffs and Counterclaim-Defendant FHCCI.

### C. Financial Information

Finally, Defendants seek to prevent the discovery of Marshall Welton's and Natalia Villanueva's personal financial information until after Defendants' forthcoming motion for summary judgment. Defendants do not dispute the relevance of this information but, instead, argue that this information is highly sensitive and should not be disclosed at this stage of the litigation. In response, the Plaintiffs argue that net worth discovery should not be delayed because (1) this information will facilitate settlement discussions, and (2) any delay will prejudice Plaintiffs' ability to fully discover this information.

Under Rule 26, the Court has an obligation to limit the broad scope of discovery if it determines that the burden or expense of complying with discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii); *Finch v. City of Indianapolis*, No. 1:08-cv-0432-DML-RLY, 2011 WL 2516242, at *4 (S.D. Ind. Dec. 31, 2011). Rule 26 also permits the Court to forbid or limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expanse." Fed. R. Civ. P. 26(c)(1)(A),(B),(D); *Finch*, 2011 WL 2516242, *4. To determine if Defendants should be protected from disclosing their personal finances the Court must balance the broad scope of discovery with the above Rule 26 factors. *See Finch*, 2011 WL 2516242, *4.

In housing discrimination cases, a plaintiff may recover punitive damages "when the defendant recklessly or callously disregards his rights or intentionally violates federal law." *United States v. Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. 323, 326 (N.D. Ind. 2009); see also, *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 270 (1981); *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1099–1100 (7th Cir. 1992). Here, Plaintiffs' Complaint specifically identifies several predatory tactics and advertising campaigns that they claim Defendants knowingly and intentionally directed toward the Indianapolis Latino community "due to their isolation by language, citizenship, and lower incomes." [Dkt. 1 at 12], including the renting of houses that were uninhabitable [Dkt. 9 at 15–16, 26–33.] The Plaintiff's Complaint further alleges that Defendant Welton targeted vulnerable and unsophisticated Latino borrowers who were unlikely or unable to complain by providing them with English-only lease agreements, the terms of which violated the law. [Dkt. 1 at 13, 19-21]. Defendant Villanueva who served as Welton's interpreter, allegedly gained the trust of Welton's Latino customers and then used that trust to exploit the predatory rent-to-buy scheme. [Dkt. 1 at 27-28]. The Complaint maintains that the Defendants acted with reckless disregard of the rights of each Plaintiff, all in violation of the Fair Housing Act. [Dkt. 1 at 48-49][7]

---

[7] Plaintiffs' Complaint also seeks punitive damages under the Equal Credit Opportunity Act (15 U.S.C. § 1691, *et seq*.), Civil Rights Act of 1866 (42 U.S.C. § 1981), Civil Rights Act of 1871 (42 U.S.C. § 1958(3)), and Truth in Lending Act 15 U.S.C. § 1601, *et seq*.). However, Plaintiffs' argument in their response brief only addresses the availability of this information under the Fair Housing Act. Accordingly, the Court has limited its analysis to punitive damages under the Fair Housing Act.

Based on the allegations in the Complaint, the Court agrees with the Parties that the Defendants' financial status is relevant to the issue of punitive damages. Relying on *Finch v. City of Indianapolis* the Defendants maintain, however, that the Court should delay discovery on this matter until after summary judgment. No. 1:08-cv-0432-DML-RLY, 2011 WL 2516242, at *4 (S.D. Ind. Dec. 31, 2011).

In *Finch v. City of Indianapolis*, this court considered whether discovery of individual defendants' net worth in a federal civil rights action should be delayed until after the court ruled on summary judgment. *Id*. at *3–7. The court noted the highly intrusive nature of requests for personal net worth information and determined, after balancing the Rule 26 factors, that personal net worth discovery in that case should be delayed until after summary judgment. *Id*. at *7. In reaching that conclusion, the court noted that the defendants' qualified immunity defenses were still pending and the complaint only provided a bare assertion to punitive damages based on conclusory allegations. *Id*. at *4-6. Specifically, the court found that the plaintiffs' unspecified and conclusory allegations of discrimination gave the court no factual basis to infer that the plaintiffs would be entitled to punitive damages. *Id*. Thus, the court concluded that the "inefficiencies caused by delaying [net worth] . . . discovery [were] outweighed by the interests served in delaying it." *Id*. at *4, 7.

Unlike the complaint in *Finch*, the Plaintiffs' alleged circumstances outlined in this case demonstrate "at least a real possibility that punitive damages will be at issue." *Chenoweth*, 98 F.R.D. 587, 589 (W.D. Pa. 1983); *accord Finch*, 2011 WL

2516242, at *6; *Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. at 328; *Envtl. & Demolition Servs.*, 246 F.R.D. at 250. Moreover, the Plaintiffs have made more than bare conclusory allegations in the Complaint, and have identified specific documentation, advertisements, and contract terms that demonstrate a predatory lending scheme in violation of the Fair Housing Act.

Moreover, in *Finch*, the court noted that the potential inefficiencies of delaying discovery were mitigated because the plaintiffs still had to clear the high hurdles of qualified immunity and entitlement to punitive damages. *Finch*, 2011 WL 2516242, at *7. As noted above, neither of those hurdles exist here. Accordingly, the Court will not delay discovery on the Defendants' financial status until after summary judgment. Therefore, Defendants' Motion for Protective Order, as it relates to staying the discovery of the Individual Defendants' net worth until after summary judgment, is **DENIED**.

Because only the current financial status of a defendant is relevant to the issue of punitive damages, *Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. at 328–29, the Court limits the scope of discovery of all the requested financial information relating to Interrogatory 75 and Requests for Production 93 and 94 to the period of January 1, 2016 to the present.

Thus, Defendants' objections to Plaintiffs' Interrogatory 75 and Request for Production 93 and 94 are **OVERRULED**. Interrogatory 75 was served before any Individual Plaintiff reached her or his limit of five additional interrogatories. Therefore, Defendants shall respond to those requests, subject to the time period

established above and the Parties' protective order, [Dkt. 52], by no later than June 20, 2019.

## IV.    Conclusion

Defendants' Motion for Protective Order (Dkt. 176) is **GRANTED IN PART** and **DENIED IN PART**. The Defendants' request to require Plaintiffs/Counterclaim-Defendants to obtain leave of court before issuing any further interrogatories or requests for production is **GRANTED**. Notwithstanding this protection, Defendants shall respond to FHCCI's Interrogatories 90–91, 93 and the first two interrogatories contained in Interrogatory 94.

The Defendants' request to stay net worth discovery of the Individual Defendants is **DENIED**. Defendants' objections to Plaintiffs' Interrogatory 75 and Request for Production 93 and 94 are **OVERRULED**.

So ORDERED.


Date: 6/10/2019

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana



Distribution:

All ECF-registered counsel of record via email.