UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FAIR HOUSING CENTER OF CENTRAL INDIANA,            )
INC., et al.,                                       )
                                                    )
                        Plaintiffs,                 )
                                                    )
            vs.                                     )        No. 1:18-cv-1098-JMS-DLP
                                                    )
MARSHALL WELTON, et al.,                            )
                                                    )
                        Defendants.                 )

## ORDER

This case involves numerous plaintiffs who sued numerous defendants alleging discriminatory and predatory conduct in the marketing and sale of derelict homes on a "rent-to-own" basis in Indianapolis.  Among others, Plaintiffs brought claims under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*., and other federal civil rights statues.  The parties have settled the case pursuant to a Settlement Agreement and entered into a Consent Decree, [Filing No. 303].  The Settlement Agreement includes a provision stating that Defendants will pay Plaintiffs' attorneys' fees and costs and setting the floor and ceiling for the amount that Plaintiffs may recover.  Because the parties have not been able to agree on a number within that range, Plaintiffs have filed a Motion for Attorneys' Fees and Costs, [Filing No. 304], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

The FHA provides that "the court, in its discretion, may allow the prevailing party[] . . . a reasonable attorney's fee and costs." 42 U.S.C.A. § 3613(c)(2).  The same is true in civil rights actions brought pursuant to 42 U.S.C. §§ 1981 and 1985. 42 U.S.C. § 1988(b).  Determining what

1

fees are reasonable is a "contextual and fact-specific" inquiry. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).[1]  The party seeking fees must submit appropriate documentation to meet the burden of establishing entitlement to a fee award.  *Fox v. Vice*, 563 U.S. 826, 838 (2011). However, the determination of fees "should not result in a second major litigation," as the essential goal in shifting fees is "to do rough justice, not to achieve auditing perfection."  *Id.* (internal quotations and citations omitted).  "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Id.*

Similarly, district courts have broad discretion in determining whether and to what extent parties may be awarded costs.  *Armstrong v. BNSF Ry. Co*., 880 F.3d 377, 383 (7th Cir. 2018) (citation omitted).  "The process for awarding court costs is intended to be summary," and the district court should not resolve arguments regarding the winning party's strategy in litigating the case.  *Extra Equipamentos E Exportacao Ltda. v. Case Corp*., 541 F.3d 719, 727 (7th Cir. 2008). Nonetheless, the court must discern whether the costs are both (1) recoverable and (2) "reasonable and necessary."  *Cengr v. Fusibond Piping Sys., Inc*., 135 F.3d 445, 454 (7th Cir. 1998) ("Having found that the requested costs are statutorily recoverable, we move on to discuss whether the district court abused its discretion in finding that the costs were both reasonable and necessary."); *see also Trustees of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co*., 570 F.3d 890, 904-05 (7th Cir. 2009)  ("A district court necessarily must assess the reasonableness of any fees and costs requested.").  "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable."  *Trustees*, 570 F.3d at 906.

---

[1] Because the various federal fee shifting statutes embody the same reasonable fee standard, caselaw concerning reasonableness under one fee-shifting provision is instructive as to reasonableness under the others.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 n.3 (2010) (noting that "virtually identical" language awarding a "reasonable" fee appears in many of the federal fee-shifting statutes).

## II.
### BACKGROUND

Plaintiffs are the Fair Housing Center of Central Indiana, Inc. and twelve individuals who alleged that they engaged in purchase option or land contract transactions with an organization owned and operated by Defendants. [Filing No. 9.] In the Amended Complaint, Plaintiffs asserted claims under the federal FHA; the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*; the federal Civil Rights Act of 1866, 42 U.S.C. § 1981; the federal Civil Rights Act of 1871, 42 U.S.C. § 1985(3); the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*; and various Indiana statutes. [Filing No. 9.] Defendants asserted several state law counterclaims. [Filing No. 32.]

In the Settlement Agreement and resulting Consent Decree, neither Plaintiffs nor Defendants admitted liability, and each side continued to deny the material allegations of the other. [Filing No. 303 at 2.] However, Defendants agreed to pay a sum to Plaintiffs in full satisfaction of any and all claims and agreed to pay Plaintiffs' attorneys' fees and costs pursuant to the terms of the Settlement Agreement. [Filing No. 303 at 2.] The parties represent that the settlement amount to be paid to Plaintiffs is $395,000 and the total amount paid to cover attorneys' fees and costs must be not less than $350,000 and not more than $750,000. [Filing No. 304-1 at 10.] The Consent Decree provides that, "[s]olely for purposes of [Plaintiffs' Motion], Plaintiffs shall be deemed prevailing parties under the fee-shifting provisions of the federal and states statutes invoked in the first amended complaint." [Filing No. 303 at 2.]

The parties also agreed to equitable relief pertaining to the individual Plaintiffs' own housing transactions and to Defendants' practices generally. [Filing No. 303 at 3-6.] This includes the requirement that Defendants modify their housing transactions to comply with the federal and state laws at issue in this action, record certain types of transactions, and provide customers with certain documents. [Filing No. 303 at 3-6.]

Throughout the litigation, Plaintiffs were represented by the following attorneys: Christopher Brancart and Liza Cristol-Deman of Brancart & Brancart; Christopher Clark of Goodin Abernathy, LLP; and Chase Haller of the Neighborhood Christian Legal Clinic.  [Filing No. 2; Filing No. 4; Filing No. 5; Filing No. 49.]  As reflected in their fee motion, these attorneys were assisted by other attorneys and legal assistants within their respective firms.

### III.
### DISCUSSION

Plaintiffs argue that, as the prevailing parties, they are entitled to reasonable attorneys' fees pursuant to the fee-shifting provisions of the FHA and § 1988.  [Filing No. 304-1 at 11-12.]  They ask the Court to award them $750,000—the highest possible amount under the Settlement Agreement—because, they argue, a reasonable fee based upon their requested hourly rates, the number of hours expended, and the expenses incurred exceeds that cap. [*See* Filing No. 304-1.]

Defendants do not dispute that Plaintiffs are entitled to fees, but vigorously dispute the amount of fees and costs owed. [*See* Filing No. 309.]  Indeed, Defendants challenge the hourly rates charged by several of Plaintiffs' attorneys, raise numerous objections to the number of hours billed, and dispute some of the claimed costs, asserting that a more reasonable award is no more than $456,566.53.  [Filing No. 309.]  The Court will address each of these issues in turn.

**A.  Plaintiffs' Proposed Lodestar**

The first step in determining a reasonable fee under a federal fee-shifting provision is to calculate the lodestar, which is the product of the number of hours the attorney reasonably spent on the case multiplied by a reasonable hourly rate.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-53 (2010); *Montanez*, 755 F.3d at 553.  Plaintiffs' calculation of the lodestar is $1,103,939.00.  [Filing No. 304-1 at 12.]  They arrive at this figure by multiplying their suggested hourly rate for

each attorney and legal assistant by the number of hours worked by that person, as stated in the following chart:

| Plaintiffs' Proposed Unadjusted Lodestar | | | |
|---|---|---|---|
| | Hourly Rate | Hours | Fee |
| Christopher Brancart (Attorney) | $550 | 1,128.3 | $620,565.00 |
| Elizabeth Brancart (Attorney) | $550 | 113.6 | $62,480.00 |
| Liza Cristol-Deman (Attorney) | $400 | 42 | $16,800.00 |
| Sarah Dupree (Legal Assistant) | $110 | 695.8 | $76,538.00 |
| Cole Clark (Legal Assistant) | $95 | 39.7 | $3,771.50 |
| Ali Goss (Legal Assistant) | $95 | 27.6 | $2,622.00 |
| Christopher Clark (Attorney) | $400 | 621.5 | $248,600.00 |
| Abaigeal Musser (Attorney) | $250 | 4.2 | $1,050.00 |
| Rachel Craft (Legal Assistant) | $125 | 47.1 | $5,887.50 |
| Chase Haller (Attorney) | $250 | 262.5 | $65,625.00 |
| | | **Total** | **$1,103,939.00** |

[Filing No. 304-1 at 13-14.]

Defendants, on the other hand, dispute this lodestar calculation, arguing that: (1) Plaintiffs' proposed hourly rates for attorneys Christopher Brancart, Elizabeth Brancart, Liza Cristol-Deman, Christopher Clark, and Chase Haller are unreasonable; and (2) the total number of hours reportedly worked on this case is unreasonable for a variety of reasons.  [Filing No. 309 at 4-32.]

### B.  Hourly Rates

The Court will first address the attorneys' hourly rates.  A reasonable hourly rate is "one that is 'derived from the market rate for the services rendered.'"  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)).  "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate."  *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (citation omitted).  "If the court is unable to determine the attorney's true billing rate, however (because he maintains a contingent fee or public interest practice, for example), then the court should look to the next best evidence—the rate charged by lawyers in the

community of 'reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)); *see also Pickett*, 664 F.3d at 640 ("Recognizing the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements, we have advised district courts to rely on the 'next best evidence' of an attorney's market rate, namely 'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.'" (quoting *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999))).  "It is the fee applicant's burden to establish his or her market rate; if the applicant fails, the district court may make its own rate determination." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012) (citations omitted).

### 1.  The Brancart & Brancart Attorneys

Brancart & Brancart, based in California, specializes in federal fair housing litigation. [Filing No. 304-2 at 2.]  Christopher Brancart has 30 years of experience litigating federal fair housing cases.  [Filing No. 304-2 at 2-3.]  Elizabeth Brancart's practice has focused primarily on fair housing litigation since 1994.  [Filing No. 304-8 at 2-5.]  Ms. Cristol-Deman joined Brancart & Brancart as an associate in 1997, and since then has litigated hundreds of federal fair housing cases.  [Filing No. 309-9 at 1-2.]  Currently, Mr. Brancart, Ms. Brancart, and Ms. Cristol-Deman are partners at the firm.  [Filing No. 304-1 at 15; Filing No. 304-2 at 2; Filing No. 304-9 at 1.]

Plaintiffs argue that a reasonable hourly rate for Mr. Brancart and Ms. Brancart is $550, and a reasonable hourly rate for Ms. Cristol-Deman is $400.  [Filing No. 304-1 at 15.]  As to the Brancarts, Plaintiffs assert that the proposed rates are reasonable because both attorneys have more than 30 years of experience, specializing in fair housing cases for the past 25 years, and both are nationally recognized experts in fair housing litigation.  [Filing No. 304-1 at 15.]

In support of the proposed rate, Mr. Brancart avers that $550 is at the low end of the range of rates his firm ordinarily charges fee-paying clients, although the "overwhelming bulk" of their practice involves clients who do not pay fees upfront, and instead they are generally compensated under federal civil rights fee-shifting statutes.  [Filing No. 304-2 at 15.]  Mr. Brancart then lists the following previous fee awards in support of his requested rate:

- *Fair Housing Center of Central Indiana, Inc. v. Smitley*, 2018 WL 3237860 (S.D. Ind. July 3, 2018), in which he was awarded $450 per hour as requested;

- *Macias v. Lange*, 2017 WL 2445516 (S.D. Cal. June 6, 2017), in which he was awarded $500 per hour as requested;

- *Fair Housing Council of San Fernando Valley v. Roommate.com*, CV 03-9386 PA (C.D. Cal., May 11, 2009), in which he was awarded $400 per hour although he requested $550 per hour, [Filing No. 309-4 at 4]; and

- *Fair Housing Foundation v. Zulfacar*, CV 07-8070-ODW (C.D. Cal. Aug. 5, 2008), in which he was awarded $365 per hour as requested, [Filing No. 309-8].

[Filing No. 304-2 at 16.][2]

Ms. Brancart avers that she ordinarily charges $550 to $650 per hour in matters in which she bills an hourly rate, though she also acknowledges that, in the majority of cases, the firm does not charge clients an hourly fee and instead receives compensation under federal fee-shifting statutes. [Filing No. 304-8 at 6-7.]  She relies on the following awards in support of her requested rate:

- *Smitley*, in which she was awarded $450 per hour as requested;

---

[2] Plaintiffs also rely on this Court's decision in *Nat'l Collegiate Athletic Ass'n v. Kizzang LLC*, 2018 WL 2266469, at *10 (S.D. Ind. May 17, 2018), which concluded that rates of $550 and $600 were reasonable for particular attorneys.  The Court is cognizant of its prior decisions but further discussion of *Kizzang* is unnecessary, given that it involved attorneys, parties, and circumstances quite different from those involved in this case.

- *The Jam Ltd. P'ship v. Perez*, No. 112-CV-226399 (Cal. Super. Ct. Nov. 20, 2012), in which she was awarded $450 per hour;[3]

- *Roommate.com*, in which she was awarded $400 per hour although she requested $550 per hour, [Filing No. 309-4 at 4]; and

- *Fair Hous. Council of San Diego v. Penasquitos Casablanaca Owner's Assoc.*, No. 3:05-cv-00072-LAB-CAB (S.D. Cal. Dec. 10, 2007), in which she was awarded $350 per hour as requested, [Filing No. 309-3 at 8].[4]

[Filing No. 304-8 at 7-8.]

Plaintiffs have included an affidavit from Thomas Crishon, an Indiana civil rights attorney who currently serves as the Legal Director of Indiana Disability Rights and has worked on fair housing cases with the Brancart & Brancart attorneys.  [Filing No. 304-12.]  Mr. Crishon avers that he is familiar with the rates ordinarily charged by civil rights attorneys in Indianapolis, and that attorneys with comparable skills, experience, and reputation to that of Mr. Brancart, Ms. Brancart, and Ms. Cristol-Deman charge between $400 and $650 per hour.  [Filing No. 304-12 at 4.]  Mr. Crishon specifically opines that the rates requested by Mr. Brancart, Ms. Brancart, and Ms. Cristol-Deman "are reasonable and comparable to rates charged by Indianapolis attorneys with comparable skills, experience and reputation."  [Filing No. 304-12 at 4.][5]

---

[3] Ms. Brancart did not provide the Court with copies of the relevant records from this case, and the Court was unable to locate such records to verify the accuracy of Ms. Brancart's representations, beyond the fact that attorneys' fees were indeed awarded.

[4] Mr. Brancart was awarded fees in this 2007 case at a rate of $350 per hour.  [Filing No. 309-3 at 8.]

[5] Defendants assert that Mr. Crishon's affidavit is deficient because "he fails to identify similar cases he personally handled and what rate was received or specific rates awarded to other fair housing attorneys in the area."  [Filing No. 309 at 15.]  Accordingly, Defendants argue, his affidavit—as well as the other affidavits submitted by Plaintiffs—are conclusory and of little probative value.  [Filing No. 309 at 16.]  Interestingly, however, it appears that all of the affidavits submitted by Defendants are the same in this regard—none of the affiants provide their own billing records, retainers, or evidence of their own hourly rate, nor do they list their own prior fee awards.

Plaintiffs also rely upon co-counsel Christopher Clark's affidavit, in which he states that he has practiced law in Indianapolis for 24 years and has become familiar with the hourly rates charged by attorneys with comparable skills, experience, and reputation to the Brancarts. [Filing No. 304-10 at 2.] Mr. Clark opines that those rates range from $500 to $700 per hour, and that the requested rate of $550 per hour is "reasonable and at the low end of the Indianapolis market." [Filing No. 304-10 at 2.] Mr. Clark states that he charges $400 per hour. [Filing No. 304-10 at 2.]

Defendants respond that neither Mr. Brancart nor Ms. Brancart have demonstrated that their requested rate is reasonable. [Filing No. 309 at 8-13.] Specifically, Defendants assert that Mr. Brancart and Ms. Brancart have not presented any evidence that they have ever charged a client $550 per hour, and they have not pointed to a prior case in which they have been awarded fees based on that hourly rate. [Filing No. 309 at 8-13.] Defendants also argue that Plaintiffs' characterization of some of the Brancarts' previous fee awards amounts to a lack of candor to the Court. [Filing No. 309 at 10-13.] In addition, Defendants assert that the rates charged by their counsel—the highest of which is $455 per hour for an attorney with over 45 years of experience— are instructive. [Filing No. 309 at 16.] Considering all of these factors, Defendants assert that a more appropriate rate for the Brancarts would be $425 per hour. [Filing No. 309 at 18.]

Defendants include an affidavit by Steven Earnhart, an Indianapolis attorney with 25 years of experience, who states that, based on his experience, an hourly rate of $550 is "well above the standard for litigation in this district," and "[w]hile there are practitioners billing at or above that rate in the area, they are usually senior partners in the largest law firms (with large corporate clients), and practicing in specialized areas of law such as bankruptcy." [Filing No. 309-3 at 3.]

---

The Court will spare the parties a lecture on the proverbial "pot and kettle" and will simply decline the invitation to discount the whole lot of submitted affidavits on this basis.

Mr. Earnhart states that he does "not believe individuals practicing in general litigation, civil rights, or public interest law would be able to command $500 or more per hour in this area," and he is "unaware of any attorney practicing in general litigation, civil rights, or public interest law commanding $750.00 per hour." [Filing No. 309-9 at 3.]

Defendants also submit an affidavit from Mario Massillamany, an Indianapolis attorney with 16 years of experience who shares Mr. Earnhart's opinion that $550 per hour is "well above the standard for litigation in this district," as that rate is only charged by "senior partners in the largest law firms (with large corporate clients), and practicing in specialized areas of law such as bankruptcy." [Filing No. 309-10 at 3.]  Mr. Massillamany believes that attorneys practicing in general litigation, civil rights, or public interest law would not be able to command $500 or more per hour.  [Filing No. 309-10 at 3.]

In reply, Plaintiffs maintain that the Brancarts' requested rate of $550 per hour is reasonable. [Filing No. 314 at 3-7.] They assert that Mr. Brancart's and Ms. Brancart's declarations constitute sufficient evidence that they each are currently charging hourly rates of $550 and above. [Filing No. 314 at 5-6.] Plaintiffs further state that, "[i]n any event, plaintiffs' counsel are currently charging and being paid hourly rates of $600 and $650 by fee-paying clients in fair housing litigation in the Central District of California and Ninth Circuit.  If the Court wishes to see copies of those retainers, plaintiff will file them under seal." [Filing No. 314 at 6 (internal citation omitted).]  Plaintiffs also assert that they did not withhold any material information from the Court or misrepresent the Brancarts' prior fee awards.  [Filing No. 314 at 3-5.]

The Court agrees with Defendants that Plaintiffs have not met their burden of demonstrating that $550 per hour is a reasonable hourly rate for either Mr. Brancart or Ms. Brancart in this market.  First, Plaintiffs have not presented any evidence, beyond the Brancarts' affidavits,

that the Brancarts actually charge $550 or more per hour.  *See Spegon*, 175 F.3d at 556 ("An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services.").  Indeed, Mr. Brancart did not even identify his own range of ordinary rates in his initial affidavit, stating: "My understanding from reviewing awards and declarations filed in other civil rights and complex litigation cases in California, and from speaking with other civil rights practitioners practicing there, is that attorneys of my experience and expertise *would bill* at a rate in the range of $650-$750."  [Filing No. 304-2 at 15-16 (emphasis added).]  Although Plaintiffs offer to provide evidence of their prior fee arrangements under seal, the Court declines to give them that opportunity, given that the burden of proof has always been on Plaintiffs to establish their counsels' rates and they failed to do so both initially and after the issue was pointed out in Defendants' response.  Accordingly, Plaintiffs have not established that the Brancarts' actual rate is $550 per hour.  *See Johnson*, 668 F.3d at 933 ("In this case, the district court concluded that [plaintiff's counsel] didn't establish his actual billing rate (which he claims is $600 per hour) because the evidence he presented didn't show how much he was actually paid and for what kind of work. That was within the district court's discretion.").

As a result, the Court is left to determine a reasonable rate.  As a preliminary matter, contrary to Defendants' assertions, the Court does not characterize Plaintiffs' recitation of the Brancarts' history of fee awards as misleading or evidencing a lack of candor, as many of the purported misrepresentations or inconsistencies pointed out by Defendants—to the extent that they can be deemed such—are not particularly relevant to the issue of what constitutes a proper hourly rate.  It is true that Plaintiffs did not list every fee award that Mr. Brancart or Ms. Brancart have ever received, but they included what the Court finds to be relevant awards and sampled some of their other awards for context.  Specifically, the most relevant prior awards are those in *Smitley*

($450 per hour) and *Macias* ($500 per hour), because they are the most recent and because *Smitley* was decided in this Court.

The Plaintiffs assert that *Smitley* is distinguishable because it resulted in a default judgment and therefore the Brancarts sought a lower rate than they ordinarily would because courts tend to award lower rates in default cases.  [Filing No. 314 at 5.]  Defendants respond that Plaintiffs' argument is unavailing because, although the case ended with a default judgment, the defendant did appear in that matter and did litigate some issues before the defendant's counsel withdrew and default was ultimately entered.  [Filing No. 309 at 11-12.]  A review of the *Smitley* docket shows that Defendants accurately describe the *Smitley* litigation.  Regardless, the Court in *Smitley* concluded that $450 per hour was a reasonable market rate for the Brancarts' services, without any discussion of the nature of the judgment entered.  *Smitley*, 2018 WL 3237860, at *3.  Given that this rate is consistent with the reasonable hourly rates in the Indianapolis area as articulated in the affidavits of Mr. Chrishon, Mr. Earnhart, and Mr. Massillamany, and based on the Court's own understanding of reasonable rates in the community, the Court finds that **$450 per hour is a reasonable rate for both Mr. Brancart and Ms. Brancart**.

As to Ms. Crisol-Deman, although Defendants articulate various reasons why they do not believe that $400 is a reasonable rate, they ultimately do not seek to reduce her hourly rate in computing the fee award.  [Filing No. 309 at 18 n.18.]  Accordingly, the Court will not recite or address any of the arguments concerning her fees and concludes that **$400 per hour is a reasonable rate for Ms. Cristol-Deman**.

### 2. *Christopher Clark*

Plaintiffs seek an hourly rate of $400 for attorney Christopher Clark of Goodin Abernathy LLP.  [Filing No. 304-1 at 15.]  Mr. Clark has been practicing law for 25 years, has been

representing the Fair Housing Center of Central Indiana in various matters for 5 years, and also has experience representing individual clients in fair housing cases.  [Filing No. 304-10 at 1-2.] He avers that his current hourly rate is $400.  [Filing No. 304-10 at 2.]

In support of Mr. Clark, Jerry Garau, an Indianapolis attorney with 34 years of experience, avers that he "know[s] the hourly rates charged by attorneys with comparable skills, experience and reputation to Mr. Clark," and that those rates range from $400 to $750.  [Filing No. 304-13 at 1-2.]  William Riley, an Indianapolis attorney with 31 years of experience, also avers that he is "aware of" the rates generally charged by attorneys with comparable skills, experience, and reputation to Mr. Clark, which range from $400 to $750.  [Filing No. 304-14 at 1-2.]  Mr. Riley opines that Mr. Clark is "a leading lawyer in the field of Fair Housing in the Southern District." [Filing No. 304-14 at 2.]

Defendants respond that $400 is not a reasonable hourly rate for Mr. Clark.  [Filing No. 309 at 13.]  Specifically, they assert that Mr. Clark has not presented any evidence demonstrating that he has actually charged or been paid that rate, and in a declaration filed in the *Smitley* case, he stated that his hourly rate was $350.  [Filing No. 309 at 13 (citing Filing No. 309-11 at 2).] Defendants argue that a reasonable rate for Mr. Clark is "$350 per hour or less," but go on to state that "[t]he evidence supports a rate of $350 per hour for Mr. Clark." [Filing No. 309 at 13.][6]

Defendants rely on the affidavit of Mr. Earnhart, who states that his law firm is "similar in size and scope" to Mr. Clark's firm.  [Filing No. 309-9 at 2.]  Mr. Earnhart opines that Mr. Clark's

---

[6] Defendants assert that a further decrease is warranted based on Mr. Clark's "failure to disclose [his] prior fee award" in the *Smitley* case, [Filing No. 309 at 13], and in the chart summarizing their proposed hourly rates, they use $325 per hour for Mr. Clark, [Filing No. 309 at 18].  As noted by Plaintiffs, [Filing No. 314 at 7], because Mr. Clark was not in fact awarded a fee in the *Smitley* case, he did not fail to disclose anything.  And because Defendants acknowledge that the evidence supports a rate of $350 for Mr. Clark, [Filing No. 309 at 13], the Court will consider $350 per hour as Defendants' proposed rate.

proposed $400 hourly rate is "high compared to similar sized firms practicing in similar areas of law in the greater Indianapolis area." [Filing No. 309-9 at 2.] Mr. Earnhart states that $350 per hour "is the highest rate paid by any [of his] clients," and the firms in Indianapolis that charge $400 or more per hour "are typically larger firms whose clients are larger businesses capable of paying the higher rates." [Filing No. 309-9 at 3.] Mr. Earnhart opines that a more reasonable rate for Mr. Clark's services is $350 per hour or less. [Filing No. 309-9 at 3.]

Defendants also rely upon Mr. Massillamany, who states that, in his opinion, Mr. Clark's proposed hourly rate of $400 "is high." [Filing No. 309-10 at 2.] He states that "[w]hile there are firms within Indianapolis that charge $400 or more per hour for individuals of similar experience, those are typically larger firms whose clients are larger business entities capable of paying the higher rates." [Filing No. 309-10 at 2.] Mr. Massillamany opines that Mr. Clark's suggested rate is unreasonable and a more reasonable rate is $350 per hour or less. [Filing No. 309-10 at 3.]

In reply, Plaintiffs argue that neither the rates of Defendants' counsel nor the third-party affiants govern Mr. Clark's recoverable rate. [Filing No. 314 at 7.] They maintain that $400 is a reasonable hourly rate because "[i]n his contingent fee practice Mr. Clark's hourly rate far exceeds the $400 hourly rate sought here." [Filing No. 314 at 7.] In his supplemental affidavit, Mr. Clark maintains that his hourly rate is $400, stating that most of his work is done on a contingency basis and his contingency fees range from one-third to 40% of the plaintiff's recovery, depending on the case. [Filing No. 314-2 at 1.] He points to two clients for whom he negotiated settlements in 2018, the first resulting in a fee of $10,000 for 4.2 hours of work (or $2,381 per hour) and the second resulting in a fee of $13,332 for 9.5 hours of work (or $1,403 per hour). [Filing No. 314-2 at 2.]

As a preliminary matter, Mr. Clark's breakdown of his contingent fee awards into average hourly rates sheds no light on the hourly rate that he would charge a client outside of a contingency

fee arrangement, which is the sole question before the Court.  Indeed, the fact that Mr. Clark points only to previous contingency fees only amplifies the absence of evidence, beyond his own statement, that he actually charges clients a rate of $400 per hour.  Accordingly, the Court is left to determine a reasonable hourly rate.

The Court acknowledges that Mr. Clark's affidavit filed in *Smitley* is dated April 6, 2018 and stated that his "*current* hourly rate is $350."  [Filing No. 309-11 at 2 (emphasis added).] Although that was approximately two years ago, it was only five days before Mr. Clark entered his appearance in this case, [Filing No. 5], and approximately three months after he had started working on this case, [Filing No. 304-10 at 8 (Mr. Clark's billing records showing work performed starting on January 8, 2018).]  In other words, it appears that, if Mr. Clark charged an hourly fee in this case, he likely would have charged $350.  Accordingly, based on Mr. Clark's prior statement, the affidavits submitted by Defendants, and the Court's general understanding of the Indianapolis market, the Court finds that **$350 is a reasonable hourly rate for Mr. Clark**.

### 3.  Chase Haller

In their initial motion, Plaintiffs appeared to propose an hourly rate of $250 or $300 for Mr. Haller.  [*Compare* Filing No. 304-1 at 14 (chart listing the rate as $250), *with* Filing No. 304-1 at 17 ("Plaintiffs seek an hourly rate of $300 for Chase Haller.").]  In response, Defendants propose $225 per hour as a reasonable rate, [Filing No. 309 at 14-15], and Plaintiffs concede in their reply that $225 is appropriate, [Filing No. 314 at 7-8].[7]  Based on this concession, and on the

---

[7] Plaintiffs state that, in their original motion, a rate of $200 per hour for Mr. Haller was used to calculate the lodestar and, therefore, accepting Defendants' rate of $225 actually increases the lodestar figure.  [Filing No. 314 at 7-8.]  This does not appear to be an accurate statement, as Plaintiffs' lodestar calculation, reflected in the chart above, used a rate of $250.  [*See* Filing No. 304-1 at 14.]  Regardless, the Court will accept Plaintiffs' concession as to Mr. Haller's rate.

evidence presented by the parties, the Court finds that **$225 is a reasonable hourly rate for Mr. Haller**.

### C. Court's Unadjusted Lodestar

The hourly rates for individuals not specifically discussed above were not disputed by Defendants, and the Court finds that they are reasonable.  Accordingly, based on the undisputed rates and the rates determined above, the Court concludes that the unadjusted lodestar figure, using the number of hours reported by Plaintiffs, is **$942,111.50**, as detailed in the chart below:

| Court's Unadjusted Lodestar Calculation | | | |
|---|---|---|---|
| | Hourly Rate | Hours | Fee |
| Christopher Brancart (Attorney) | $450 | 1,128.3 | $507,735.00 |
| Elizabeth Brancart (Attorney) | $450 | 113.6 | $51,120.00 |
| Liza Cristol-Deman (Attorney) | $400 | 42 | $16,800.00 |
| Sarah Dupree (Legal Assistant) | $110 | 695.8 | $76,538.00 |
| Cole Clark (Legal Assistant) | $95 | 39.7 | $3,771.50 |
| Ali Goss (Legal Assistant) | $95 | 27.6 | $2,622.00 |
| Christopher Clark (Attorney) | $350 | 621.5 | $217,525.00 |
| Abaigeal Musser (Attorney) | $250 | 4.2 | $1,050.00 |
| Rachel Craft (Legal Assistant) | $125 | 47.1 | $5,887.50 |
| Chase Haller (Attorney) | $225 | 262.5 | $59,062.50 |
| | | **Total** | **$942,111.50** |

### D. Reductions to the Lodestar

In their Motion, Plaintiffs explain the various reasons why they believe that the number of hours for which they seek fees, as well as their proposed lodestar, is reasonable.  [Filing No. 304-1 at 19-29.]  Nevertheless, Plaintiffs volunteer to reduce the lodestar figure by 10% to account for any non-compensable time spent defending against the counterclaims and then reduce the adjusted lodestar by an additional 5% to account for the possibility that some of the hours worked by the various professionals in this case were duplicative.  [Filing No. 304-1 at 21; Filing No. 304-1 at

25.]  Accordingly, Plaintiffs arrive at a final adjusted lodestar figure of $943,867.00.[8]  [Filing No. 304-1 at 31.]

Defendants raise numerous objections to Plaintiffs' calculation, some of which relate to specific billing entries, practices, or tasks that affect the number of hours worked by each attorney (or legal assistant), and some of which propose across-the-board reductions to the lodestar figure based on the overall nature and course of the litigation as a whole.  [*See* Filing No. 309 at 19-35.] Defendants represent that they calculated the proposed reductions by entering Plaintiffs' billing statements into a spreadsheet, assigning codes to each entry based on the legal task involved or the claim to which the work related, using the codes to sort the requested fees, and subtracting the fees reflected in those spreadsheets (or a portion thereof) from the total fee amount.  [Filing No. 309 at 8.]  These sorted spreadsheets are attached to Defendants' response and compute discounts separately based on Plaintiffs' suggested hourly rates and Defendants' proposed reduced rates.

In reply, Plaintiffs dispute each of Defendants' objections.  [Filing No. 314 at 8-20.] Plaintiffs take issue with Defendants' method, arguing that the "spreadsheets are completely unreliable because they grossly overestimate any reasonable reduction in fees by counting the same entry in multiple categories for reduction (with the exception of the ones dealing with discovery) and then subject the entire lodestar" to further reductions, sometimes resulting in suggested reductions that exceed the billed amounts.  [Filing No. 314 at 8.]

A review of the spreadsheets reveals that Plaintiffs are correct in their criticism of Defendants' methodology.  Defendants did not take care to determine whether the stacking of proposed discounts resulted in unjustified multiple discounts or in reductions exceeding the value

---

[8] Plaintiffs calculate this figure by reducing the lodestar by 10%, then reducing the reduced lodestar by 5%, then rounding to the nearest dollar (as opposed to reducing the unadjusted lodestar by a total of 15%).

of the billed fees.  Plaintiffs identify in their reply several examples of billing entries that, after being subjected to multiple discounts (*i.e.*, being counted on multiple spreadsheets), were discounted at amounts exceeding the fee billed in the entry.  [Filing No. 314-1 at 16-18.]  For example, Mr. Brancart billed 2.1 hours on December 19, 2017 for the following task: "Review case file by FHCCI; Prepare memo re docs by claim and work product protection; Prepare memo and email to FHCCI and co-counsel re sorting out the case file."  [Filing No. 304-3 at 2.]  That same billing entry was included in Defendants' spreadsheets for: block-billing, which proposed a 20% discount, [Filing No. 309-24 at 1]; time spent writing memoranda, which proposed a 50% discount, [Filing No. 309-27 at 1]; and time spent on internal communications, which proposed a 50% discount, [Filing No. 309-29 at 1].  In other words, the fee resulting from that entry was discounted by a total of 120%.  At the rate of $450 per hour, Mr. Brancart would have billed only $945 for this task, but Defendants propose that the Court subtract $1,134 from the total fee award based on purported block-billing and non-compensable time spent on memoranda and internal communication.  This, of course, is not permissible.

With respect to discovery-related fees specifically—which are reflected on four separate spreadsheets for different types of discovery-related tasks—Defendants acknowledge the possible duplication problem and state that they adjusted their proposed discounts by removing duplicated entries.  [Filing No. 309 at 21 n.1.]  However, given that Defendants did not identify which or how many entries were double-counted and subtracted from the proposed discount, the Court is hesitant to rely on Defendants' adjustments.  The Court's own comparison of Mr. Brancart's billing records, [Filing No. 304-3], to Defendants' spreadsheets proposing discovery-related reductions, [Filing No. 309-16; Filing No. 309-18; Filing No. 309-20; Filing No. 309-22], revealed that approximately 24 of his billing entries appeared on two separate spreadsheets, while at least one entry appeared

18

on three separate spreadsheets.  Defendants' apparent awareness of this issue and failure to account for it in calculating the non-discovery-related discounts makes the flawed methodology all the more egregious.

This multiple counting issue, in combination with the fact that the spreadsheet calculations are based on hourly rates different than those determined above, leads the Court to conclude that the spreadsheets are not reliable reflections of the monetary value of potential deductions to the requested fees and are largely useless to the extent they are intended to provide the Court with mathematical calculations.  The law is clear that "trial courts need not, and indeed should not, become green-eyeshade accountants" in awarding attorneys' fees.  *Fox*, 563 U.S. at 838. Therefore, the Court will not attempt to recreate the calculations that Defendants performed incorrectly.  Instead, the Court will consider the objections raised by Defendants as factors in determining the level of across-the-board reductions that will be necessary to arrive at a reasonable fee in this case.  *See World Outreach Conference Ctr. v. City of Chi.*, 896 F.3d 779, 783-84 (7th Cir. 2018) (recognizing that there is no specific algorithm for determining an appropriate across-the-board reduction to the lodestar and the district court is in the best position to weigh relevant factors including "whether the plaintiff's lawyers would have spent substantially less time on the case had they been more realistic" (quoting *Montanez*, 755 F.3d at 556)); *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage.").

"[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not

adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554.  In this case, the Court finds that there are a variety of factors not adequately accounted for in the lodestar calculation that warrant additional reductions to Plaintiffs' requested fees and concerning which Plaintiffs have failed to carry their burden to demonstrate the reasonableness of the proposed fee amount.  The Court will address each of these factors in turn.

### 1. *Litigation Tactics and Excessive Discovery*

The primary factor that informs the Court's consideration of the appropriate fee is the overall assessment that this litigation has been unreasonably hostile and tedious.  In a previous order, the Court noted that both parties in this action have deployed "earth-scorching tactics." [Filing No. 247 at 1.]  The way that they have litigated this motion—with over 1,000 pages of argument and exhibits submitted, and disputes about nearly every aspect of the fee calculation (whether material or not)—is yet another reflection of this case as a whole.

In particular, the Court agrees with Defendants' assertion that Plaintiffs' discovery practices in this case have been excessive and overly burdensome and, as the Court has previously noted, "have proven costly, not only for the clients who are paying their attorneys, but also for the judicial officers who are assigned to this case and who have been required to dedicate a disproportionate amount of time and energy to this matter."  [Filing No. 247 at 1.]  Magistrate Judge Pryor has observed that the case has been "plagued with numerous discovery disputes," [Filing No. 250 at 2], and found that Plaintiffs' voluminous discovery requests were unduly cumulative, burdensome, and unnecessary, [Filing No. 250 at 11; Filing No. 250 at 16].  Magistrate Judge Pryor noted that "[t]his is an important case, but the scope of the litigation is not so broad that discovery should become disproportionate to the needs of the case."  [Filing No. 250 at 9.]  And neither should the attorneys' fees.

In asking the Court to award the full requested fee, and thereby conclude that the claimed fees for time spent on discovery are reasonable, Plaintiffs are essentially asking the Court to relitigate the previous discovery motions and reach a different conclusion.  This is something that the Court will not do.  As the Magistrate Judge and the undersigned have concluded on more than one occasion, Plaintiffs' discovery tactics were not reasonable, they were unduly cumulative and unnecessarily burdensome.  Accordingly, Plaintiffs cannot demonstrate that their total claimed fees—which include a significant amount of billed time spent on discovery—are reasonable. Defendants' calculations (flawed as they may be) estimate that Plaintiffs seek over $272,000 in discovery-related fees, which represents just under 30% of Plaintiffs' proposed adjusted lodestar figure.  [*See* Filing No. 309 at 20-21.]  Accounting for the fact that Defendants' calculations possibly overestimate the discovery-related fees and recognizing that some discovery-related fees are reasonable, the Court concludes that Plaintiffs' discovery-related fees should be reduced.  The Court will reduce the lodestar by 15% to account for excessive and burdensome discovery.  On top of that, the Court will reduce the lodestar figure by an additional 5% to account for Plaintiffs' unnecessary "earth-scorching tactics" that resulted in an unnecessary expenditure of time and resources at every stage in this litigation.  In sum, the Court will **reduce the lodestar by 20% to account for Plaintiffs' discovery practices and litigation tactics.**

### 2.  *Billing Practices*

Defendants make several objections that relate to Plaintiffs' counsels' billing practices, arguing that: (1) several attorneys, in particular Mr. Brancart, engage in impermissible "block-billing," [Filing No. 309 at 24-25]; (2) there are discrepancies between the billing records that Plaintiffs submitted to the Court and the billing records that Plaintiffs submitted to Defendants during settlement negotiations, which cast doubt on the credibility of Plaintiffs' records, [Filing

No. 309 at 26-27]; (3) Plaintiffs' records show excessive overstaffing and fees for writing memoranda and other internal communication between attorneys, [Filing No. 309 at 28-29]; (4) Plaintiffs should not bill for time spent on engaging counsel and co-counsel, [Filing No. 309 at 32]; and (5) Plaintiffs should bill only half-time for time spent traveling, [Filing No. 309 at 32].

a.   Block Billing

Defendants assert that Plaintiffs' counsel, particularly Mr. Brancart, engaged in improper "block-billing" by failing to detail how much of his time was spent on discrete tasks. [Filing No. 309 at 24-25.] Defendants argue that Mr. Brancart has previously been penalized by a court for this practice in *May v. Brunton*, 2014 WL 6086255, at *7 (S.D. Cal. Nov. 13, 2014),[9] and has not reformed his ways. [Filing No. 309 at 24-25.] Accordingly, Defendants propose that the Court reduce by 20% all fees attributable to block-billed entries. [Filing No. 309 at 25.]

In reply, Plaintiffs assert that Mr. Brancart did not engage in block-billing, but rather provided subject-matter-oriented records that merely detailed the sub-steps involved in a single overarching task. [Filing No. 314 at 12-13.]

"Block-billing" is "the practice of lumping several different activities into one line item." *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1029 (N.D. Ill. 2009). "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006). "The appropriate question, then, is whether the entries are detailed enough to allow the opposing party and the court to

---

[9] The court in *May* reduced Mr. Brancart's overall fees by 2% ("20% of total hours multiplied by a 10% reduction = 2% overall reduction'"), concluding that block-billing "complicated the Court's ability [to] assess the reasonableness of the hours expended against the tasks completed." 2014 WL 6086255, at *7.

determine that the time billed accurately reflects the time spent on the case." *Dupuy*, 648 F. Supp. 2d at 1029 (citation omitted).

Here, it is true that Mr. Brancart and other attorneys sometimes combined multiple tasks into a single billing entry.  And some of the entries, as Defendants point out, contain time spent on "reviewing email" or legal research.  However, a review of Mr. Brancart's billing records confirms that he often made several discrete entries on the same day, attempting to separate the many tasks he completed into subject-matter-oriented groups.  [*See* Filing No. 304-3.]  Of course, at the time when Mr. Brancart was creating his billing records, he could not have known that Defendants would lodge so many tedious objections to them, and there must be a balance struck between the burden to demonstrate that a particular fee is reasonable and the burden that would be caused by requiring attorneys to separately record time spent reviewing every email.  Given that Defendants' numerous objections—to the extent they have merit—are being addressed through across-the-board reductions to the total fee, Mr. Brancart's use of block-billing—to the extent his billing practices can be characterized as such—does not meaningfully impact the Court's ability to determine the reasonableness of the fee or the time spent on certain types of tasks in this case.  Accordingly, the Court will not discount the fees on this basis.

### b.  Alleged Discrepancies

Defendants assert that Plaintiffs' counsel's billing records are "not credible because of discrepancies."  [Filing No. 309 at 26.]  Specifically, Defendants argue that Plaintiffs' billing records do not perfectly match the attorneys' fees figures that Plaintiffs provided during settlement negotiations, and Defendants "strongly suspect that the billing records submitted by Plaintiffs were, in part, recreated for the purposes of this fee petition."  [Filing No. 309 at 26-27.]  Defendants also assert that Mr. Brancart's entries reflect time spent reviewing and editing his time records and

that many of Mr. Haller's entries are too vague or inadequate to be evaluated.  [Filing No. 309 at 17.]  To account for these issues, Defendants propose an overall 5% reduction in fees.  [Filing No. 309 at 17.]

In reply, Plaintiffs argue that there is no *per se* rule against reliance upon reconstructed records but, nevertheless, Plaintiffs' counsels' records were all created contemporaneously with the work performed and not reconstructed at a later date, as stated in each attorney's affidavit.  [Filing No. 314 at 14.]  Plaintiffs also assert that the records they provided to Defendants during settlement negotiations are the same as those provided to the Court, except the records provided to Defendants contained an inadvertent mathematical error that caused the discrepancy.  [Filing No. 314 at 14-15.]  Finally, Plaintiffs assert that Mr. Brancart editing his time records is not only permissible but expected.  [Filing No. 314 at 15 n.9.]

It is true that attorneys are required to exercise "billing judgment" in preparing fee motions, and part of that includes revising their billing records to remove excessive, redundant, or unnecessary entries.  *E.g.*, *Tomazzoli v. Sheedy*, 804 F.2d 93, 96 (7th Cir. 1986).  Accordingly, the fact that Mr. Brancart's time records show that he spent time doing so is no cause for alarm and is not in any way indicative of deceitful intent (although whether it is a proper exercise of billing judgment to include those hours in his fee petition is a different question entirely).

As to the alleged discrepancies, the Court acknowledges that there is a duty of candor between counsel to accurately report hours billed for purposes of calculating attorneys' fees during settlement negotiations.  However, the Court cannot conclude that Plaintiffs' counsel violated that duty or otherwise acted wrongfully.  Defendants first assert that the attorneys' fee amounts listed on Plaintiffs' December 5, 2018 Confidential Settlement Communication, [Filing No. 309-26 at 6], do not match the amount of fees and costs requested by Plaintiffs in their motion up to that

date.  However, the Confidential Settlement Communication lists only three figures representing the "fees and costs incurred to date" by Brancart & Brancart, Goodin Abernathy, and the Neighborhood Christian Legal Clinic, without breaking those amounts down by individual attorney or legal assistant and without providing any detail as to how those numbers were calculated, such as the number of hours claimed, the hourly rates used, or the proportion of those figures that represented costs versus fees.  [Filing No. 309-26 at 6.]  Accordingly, the Court cannot conclude, based on these numbers, that Plaintiffs misrepresented the number of hours billed as of December 5, 2018 or were otherwise dishonest in their fee calculations, either in the Settlement Communication or to the Court.

Defendants also point to various purported discrepancies between Plaintiffs' November 26, 2019 Demand Letter, [Filing No. 309-1], and Plaintiffs' fee motion.  There is a multiplication error in the Demand Letter's calculation of Mr. Haller's fees, as the reported 164.9 hours multiplied by the requested hourly rate of $200 equals a fee of $32,980.00, not $52,500.  [Filing No. 309-1 at 3.] The Court has no reason to conclude that this error was anything other than an inadvertent mistake, and it does not render Plaintiffs' counsel's billing records unreliable.

As to Defendants' assertion that the number hours claimed in the Demand Letter for Mr. Haller and Mr. Clark are lower than the number of hours each of them claimed in the fee motion as of the same date, it is worth noting that Defendants did not submit to the Court the billing records that accompanied the Demand Letter, and therefore the Court cannot verify whether there are in fact any discrepancies between those billing records and the billing records that Plaintiffs attached to their motion.  Both Mr. Haller and Mr. Clark aver that both sets of records showed the same number of hours worked, although Mr. Haller acknowledges that there was an addition error that resulted in a lower number being listed in the Demand Letter than was actually reflected in

his records.   [Filing No. 314-2 at 4; Filing No. 314-3 at 8.]  Plaintiffs provided the Court with a copy of Mr. Haller's records as they were submitted to Defendants with the Demand Letter, showing the mathematical error.  [Filing No. 314-1 at 152-56.]  Again, there is nothing to indicate that this error was anything other than unintentional, and therefore it is not probative of any misconduct.

As to Mr. Clark's hours, Mr. Clark avers that Defendants are simply incorrect that his hours reported in the Demand Letter do not match the hours reported in the fee petition.  [Filing No. 314-2 at 4 ("I had my staff run the time we submitted to the Court, but stop it at October 31, 2019.  The total number of hours of my time was as of October 31, 2019 was 588.2 in both the November 2019 time records presented to defendants and the time records filed with the Court.").]  Without a copy of the records that Mr. Clark submitted to Defendants, the Court is unable to evaluate this alleged discrepancy.  Specifically, the Demand Letter itself does not reference October 31, 2019, and instead states that the fees demanded therein were calculated "[a]s of the dates appearing on the attached billing records."  [Filing No. 309-1 at 1.]

Accepting the parties' representation that October 31, 2019 was indeed the date on those billing records, subtracting the hours he billed after October 31, 2019 from the records he provided to the Court shows that Defendants may be correct that there is a discrepancy of just over 18 hours between the hours claimed in the Demand Letter and the hours claimed in the fee motion. However, given the parties' competing representations that they have done the math and arrived at different conclusions, and their track records concerning mathematical calculations related to this motion, the most likely explanation for this discrepancy is that someone—likely Plaintiffs—made another addition error.  The Court is not inclined to scour the many pages of Mr. Clark's billing records to determine where the mistake could have been made, because ultimately it does not

matter. Counsel's duty of candor concerning attorneys' fees during settlement negotiations is not a duty of perfection, and the alleged discrepancy is not so great as to lead the Court to the conclusion that Mr. Clark fabricated or padded the records he submitted to the Court. In sum, the alleged discrepancies in Plaintiffs' billing records, to the extent they exist, do not demonstrate that Plaintiffs' records or wholly unreliable, nor do they warrant any further discount to Plaintiffs' attorneys' fees.

### c.   Overstaffing, Memoranda, and Internal Communication

Although Defendants title this section of their argument "Excessive Overstaffing," the substance of the argument does not concern the number of lawyers or legal assistants that worked on the case or on a given task, and instead asserts that Plaintiffs' counsel spent an excessive amount of time drafting memoranda (both research-related and as a form of internal communication) and communicating with one another.  [Filing No. 309 at 28-29.]  "Due to the excessive nature of internal communications, Defendants request a 50% reduction in the fees requested for time spent on memoranda and internal communications."  [Filing No. 309 at 29.]  Defendants assert that "[n]early one-fourth of the fees requested relate to internal memos and communication."  [Filing No. 309 at 29.]

In reply, Plaintiffs maintain that Defendants' argument fails to acknowledge Plaintiffs' voluntary 5% reduction to the lodestar to account for possible duplication of effort by the various lawyers and legal assistants working on the case.  [Filing No. 314 at 15.]  Plaintiffs further argue that the proposed discounts for memoranda and internal communication are inappropriate because the billing entries identified in Defendants' spreadsheets are already subject to other discounts. [Filing No. 314 at 15.]  Finally, Plaintiffs assert that Defendants' own litigation of this case—which

involved "numerous counsel in two successive law firms" as well as additional contract attorneys—demonstrates that Plaintiffs did not engage in overstaffing. [Filing No. 314 at 15.]

As a preliminary matter, Defendants' argument appears to collapse three issues into one. To the extent that Defendants intended to assert that Plaintiffs engaged in overstaffing, Plaintiffs have already acknowledged that a 5% overall reduction to the lodestar is appropriate to account for potential duplication of effort. The Court agrees that such reduction is reasonable, and therefore will **reduce the fees by 5% to account for overstaffing**.

As to counsel's preparation of memoranda, Defendants appear to assert that some memoranda were related to research tasks and therefore should not be compensated because attorneys with experience in the fair housing field should not need to do more than minimal legal research. [Filing No. 309 at 28.] Defendants also assert that the memoranda related to internal communication should not be fully compensated because the number of memoranda prepared was excessive. [Filing No. 309 at 28-29.] Notably, Defendants point to entries claiming time for memoranda preparation that overwhelmingly belong to Mr. Brancart. [*See* Filing No. 309-27.] Plaintiffs did not specifically address memoranda preparation in their reply, aside from arguing that the discount is inappropriate because the billing entries at issue had already been subjected to other discounts. [Filing No. 314 at 15.] The Court finds that this response is not sufficient to demonstrate why the time spent preparing memoranda was reasonable, especially considering the amount of time Mr. Brancart spent on this type of task. Accordingly, the Court will apply an **overall 5% reduction to Mr. Brancart's fees only to account for excessive time spent preparing memoranda**.

Turning to internal communication, the Seventh Circuit has noted that "[t]he practice of law often, indeed usually, involves significant periods of consultation among counsel." *Tchemkou*

28

*v. Mukasey*, 517 F.3d 506, 511 (7th Cir. 2008).   "[A]ttorneys seeking reimbursement for internal meetings should identify explicitly the subject matter of their discussions so that [the Court] may assess whether the amount of time recorded was 'reasonably expended.'"   *Id.* at 512.

Here, the billing entries concerning internal communication identify the subjects discussed. [*See* Filing No. 309-29.]  However, Plaintiffs have not presented any specific argument as to why the amount of time spent on internal communication was reasonably expended, nor have they countered Defendants' assertion that internal communication accounts for nearly one-fourth of their claimed fees.  Accordingly, the Court concludes that the amount of time spent has not been shown to be reasonable and will apply an **across-the-board reduction of 5% to account for excessive internal communication**.

### d.   Engagement of Counsel

Defendants assert that "attorneys do not typically charge for, and clients do not pay for, time spent to draft engagement letters or to engage co-counsel," and therefore they request that the Court subtract from the fee award time spent on that task.  [Filing No. 309 at 32.]  Defendants rely upon the affidavits of Mr. Earnhart and Mr. Massillamany, who both state that they do not bill their clients for time spent drafting or executing engagement agreements.  [Filing No. 309-9 at 3; Filing No. 309-10 at 3.]  Defendants' spreadsheet concerning these fees shows less than 12 hours of time spent on such tasks, comprised of 11.5 hours spent by Mr. Brancart and a total of 0.4 hours spent by legal assistants.  [Filing No. 309-39.]

In their reply, Plaintiffs assert that "more than half of the time defendants claim is related to the 'engagement' was time spent in substantive work." [Filing No. 314 at 19.]  They assert that only "the 4.8 hours of time that could be viewed as spent solely on the  retainer and co-counsel agreement by Christopher Brancart" falls within the engagement category.  [Filing No. 314 at 19.]

29

They maintain that the time spent by a legal assistant to translate the retainer agreement to Spanish is compensable.  [Filing No. 314 at 19.]

The Court agrees with Plaintiffs that the time entries identified by Defendants contain some time spent on substantive tasks, such as "Legal research re state law and Fair Housing Act (FHA) claims."  [Filing No. 309-39 at 1.]  In any event, Defendants have pointed to no legal authority suggesting that time spent opening a case file or engaging co-counsel is not compensable, and the Court concludes that the relatively small amount of time spent on such tasks in this case was not unreasonable.  Accordingly, the Court will not adjust Plaintiffs' fees on this basis.

e.  Travel Time

Defendants assert that "[a]ttorneys do not typically charge for local travel, and charge only half-time for travel outside of the local area."  [Filing No. 309 at 32.]  They rely upon Mr. Earnhart's affidavit, which states that he does not bill for local travel, he bills half-time or $100 per hour for non-local travel (whichever is lower), and these practices are "similar to the practice[s] of [his] colleagues in this area."  [Filing No. 309-9 at 3.]  Defendants propose that Plaintiffs' fees for time spent traveling—totaling approximately 82 hours spent by Mr. Brancart and a legal assistant—should be reduced to half time.  [Filing No. 309 at 32; Filing No. 309-41.]

In their reply, Plaintiffs assert that their travel-related fees should not be reduced because, although Mr. Earnhart may not charge for his travelling time, the Seventh Circuit has expressly authorized the recovery of such fees.  [Filing No. 314 at 19.]  Furthermore, Plaintiffs argue, even if the Court was inclined to reduce the fees associated with travel time, Defendants' spreadsheet overstates the number of hours spent on travel.  [Filing No. 314 at 20.]

Defendants' spreadsheet does appear to overstate the number of hours attributable to travel. In particular, Mr. Brancart's March 12, 2018 entry that reads "Client intake interviews and prepare

memos re same (4.5); local travel (.5)" is counted as 5 hours of travel, although the more logical reading of that entry is that half an hour was spent travelling while the remaining 4.5 hours of the entry was spent on the interviews and memos.  [Filing No. 309-41 at 1.]  Similarly, his August 22, 2019 entry that reads "Local travel to settlement conference (.5); Conference with co-counsel re settlement conference" and bills a total of 8 hours is counted as 8 hours of travel.  [Filing No. 309-41 at 1.]

Furthermore, Plaintiffs are correct that, under the law of this Circuit, travel time is compensable at the attorney's full rate.  *See Stark v. PPM Am., Inc*., 354 F.3d 666, 674 (7th Cir. 2004) ("Stark also objected to the request for travel time for out-of-town attorneys. However, inclusion of that time was proper; travel time and expenses are compensable."); *In re Maurice*, 69 F.3d 830, 834 (7th Cir. 1995) ("Attorneys customarily charge their clients for time on an opportunity-cost basis. Statutes authorizing compensation for attorneys' fees therefore permit compensation for travel time.").  The Court concludes that the hours asserted for time spent traveling by Mr. Brancart and his legal assistant—which are less than the 82 hours pointed to by Defendants—are not unreasonable, especially given that Brancart & Brancart is based in California.  Accordingly, the Court will not reduce Plaintiffs' fee award on this basis.

### 3.  *Purportedly Non-Compensable Time*

Defendants assert that Plaintiffs should not be awarded attorneys' fees for time spent on non-compensable, unsuccessful, or abandoned claims.  [Filing No. 309 at 29-32.]  Specifically, Defendants argue that any time spent researching and drafting a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") cannot be included in the fee award because Plaintiffs ultimately did not bring that claim.  [Filing No. 309 at 29-30.]  Defendants also argue that the time spent drafting the Second Amended Complaint, which was never filed, is not

compensable.  [Filing No. 309 at 30.]  Finally, Defendants argue that time spent working on the claims in Counts 5 through 14 of the Amended Complaint (under the federal Truth in Lending Act and various Indiana statutes) is not compensable because "the relevant statutes do not contain fee-shifting clauses or because the claim lacked legal or factual support."  [Filing No. 309 at 31.] Defendants assert that work related to those counts did not contribute to the success of the action because they were unrelated to the discrimination claim that was the basis for the Consent Decree. [Filing No. 309 at 31.]

In their reply, Plaintiffs assert that Defendants' argument overlooks that: (1) pursuant to the Consent Decree, Plaintiffs are the prevailing parties for purposes of the fee calculation under *all* of the fee-shifting provisions contained in *all* of the statutes invoked by the Amended Complaint; and (2) all of Plaintiffs' claims were based on the same factual predicate involving Defendants' rent-to-own scheme.  [Filing No. 314 at 16-18.]  Specifically, Plaintiffs argue that time spent on the RICO claim is compensable because, even though the claim was ultimately not asserted, it was based on the same set of facts underlying the other claims, and counsel explored the RICO option in good faith.  [Filing No. 314 at 16-17.]  Plaintiffs assert that time spent on the Second Amended Complaint—which was ultimately not filed but a motion for leave to amend was pending at the time the case was settled—is compensable because the amendment sought to add new defendants to the action and those parties were involved in the settlement.  [Filing No. 314 at 17.]  Finally, Plaintiffs assert that the time spent on Counts 5 through 14 is compensable because many of those statutes contain their own fee-shifting provisions under which Plaintiffs are the prevailing parties pursuant to the Consent Decree, and, in any event, all of the claims are based on the same facts. [Filing No. 314 at 17-18.]

As the Seventh Circuit has explained:

> Once the court has determined that the plaintiff has prevailed then the plaintiff is entitled to recover for all the time reasonably spent on a matter. "The fact that some of that time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant. So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith."

*Sherkow v. State of Wis., Dep't of Pub. Instruction*, 630 F.2d 498, 504 (7th Cir. 1980) (quoting

*Northcross v. Bd. of Educ.*, 611 F.2d 624, 636 (6th Cir. 1979)).

Furthermore, while attorneys' fees are frequently reduced to account for time spent on unsuccessful claims that are distinct from the successful claims, the same is not true for lawsuits involving related claims based on the same facts. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.").

Here, importantly, Defendants can point to no unsuccessful claims at all, because the case was settled without a determination of liability and the parties have agreed that, for purposes of this motion, Plaintiffs are prevailing parties. Furthermore, because all of the claims asserted by Plaintiffs in the Amended Complaint were based on the same factual predicate and related legal theories concerning the legality of Defendants' transactions and practices, work performed in furtherance of Counts 5 through 14 cannot meaningfully be separated from the work that advanced the litigation as a whole to the point of settlement. *See Hensley*, 461 U.S. at 435 ("In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it

difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims."). To the extent that Defendants assert that some of these claims were without merit, the Court is not inclined to evaluate the merits of any claims beyond the terms of the Consent Decree. Finally, the fact that not all of the statutes under which Plaintiffs asserted claims have fee-shifting provisions is of no import given that the claims are sufficiently related. *See Stockman v. Glob. Credit & Collection Corp.*, 2015 WL 4999851, at *5 (N.D. Ill. Aug. 21, 2015) ("Under *Hensley*, an attorney's time is compensable even for work done on non-fee-shifting claims if those claims are based on a common body of facts or law supporting claims under a fee-shifting statute."). The same logic applies to the proposed RICO claim because, although that claim ultimately was not pursued, it was not unreasonable for Plaintiffs to explore whether that legal theory could be an alternate path to recovery based on the same common core of facts at issue concerning the other claims. *See Sherkow*, 630 F.2d at 504.

As to the time spent on the Second Amended Complaint, it is difficult to discern how such time could be considered non-compensable or unrelated to the success of the lawsuit. Although the Second Amended Complaint was never filed, that is because a settlement was reached before the Court ruled on Plaintiffs' motion seeking leave to amend. Plaintiffs sought to add new defendants to this action, [Filing No. 206], and Plaintiffs represent that those proposed new defendants participated in the settlement discussions and are included in the release of claims contained within the Settlement Agreement, [Filing No. 314 at 17]. Accordingly, it is reasonable to assume that the time spent researching and drafting the proposed Second Amended Complaint or completing related briefing furthered the litigation as a whole.

In sum, because the time spent on the claims identified by Defendants cannot be meaningfully separated from the work performed in furtherance of the litigation as a whole and

because Plaintiffs are deemed prevailing parties, the Court will not reduce Plaintiffs' fees as Defendants propose. However, Plaintiffs have acknowledged that their proposed fees include time spent on non-compensable work related to defending against Defendants' counterclaims and they volunteer a 10% overall reduction to the lodestar to account for this. [Filing No. 304-1 at 21-22; Filing No. 314 at 8.] The Court accepts this concession as reasonable and will apply a **10% overall reduction to the lodestar to account for non-compensable time spent defending against Defendants' counterclaims**.

### 4.   *Complexity of the Case*

In their initial brief, Plaintiffs explain that counsel spent a lot of time "investigating this case, collecting documents, and in identifying and interviewing witnesses," which is common in a fair housing action and especially one like this involving complex real estate transactions. [Filing No. 304-1 at 19.] Mr. Brancart explains in his affidavit the extensive research and investigation he conducted in this case, and states that this case is unique because the "factual circumstances did not fit any common legal template." [Filing No. 304-2 at 6-8.]

Defendants assert that Plaintiffs overstate the complexity of this case because the theory of FHA liability based on reverse redlining is decades old, so the case did not present a complex legal issue. [Filing No. 309 at 32-34.] Defendants argue that because this case is similar to *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 170 (Ind. 2019), in which both the Fair Housing Center of Central Indiana and the Neighborhood Christian Legal Clinic submitted amicus curiae briefs at the appellate and supreme court levels, Plaintiffs were "fully up-to-speed on the legal issues" involved and the costs of litigation should have been reduced. [Filing No. 309 at 34-35.] Defendants request a 5% overall reduction to the lodestar because "Plaintiffs were not exploring new legal territory, they were trodding old ground." [Filing No. 309 at 35.]

In their reply, Plaintiffs assert that *Rainbow Realty* was not a template for this case and maintain that "this case was complex both in the necessary legal analysis and in the factual analysis and understanding needed to challenge the business transactions utilized by defendants." [Filing No. 314 at 20.] They also argue that the settlement in this case was not mandated by *Rainbow Realty*, which involved different issues and did not impact the legality of Defendants' practices at issue in this suit. [Filing No. 314 at 11.]

The novelty and complexity of a case is a factor that is generally assumed to be accounted for in the calculation of the lodestar figure because it is reflected in the hours billed by an attorney. *Perdue*, 559 U.S. at 553. Here, the Court can discern no reason to further reduce the lodestar based on the complexity (or alleged simplicity) of this case. Whether the legal theory underlying the FHA claim has been litigated before says nothing about the factual complexity of this case or the thirteen other claims that were asserted. Furthermore, even if *Rainbow Realty* did mandate the result in this case—an issue on which the Court expresses no opinion—it was not decided by the Indiana Supreme Court until September 2019, less than a month before the Consent Decree was entered in this case and after nearly all of the attorneys' billed work in this case had been completed. In applying a substantial reduction for litigation tactics and excessive discovery, the Court has already accounted for the fact that some of Plaintiffs' attorneys may have created more work than necessary based on the actual needs of the case, and the Court concludes that no additional discount should be applied to further account for the complexity of this case.

### 5. *Degree of Success Obtained*

Plaintiffs argue that they "obtained an excellent result that will inure to the benefit of the public in general and defendants' customers and potential customers in specific." [Filing No. 304-

1 at 27.] They assert that their success in this matter justifies awarding the full lodestar amount. [Filing No. 304-1 at 28.]

Defendants argue that the results obtained in this case do not justify the fees requested, particularly because: (1) the agreed-upon non-monetary relief essentially only requires Defendants to comply with federal and state laws and, regardless of this litigation, Defendants were in the process of updating their business practices to comply with such laws; (2) Defendants would have agreed to other concessions, such as translating documents, without spending hundreds of thousands of dollars in litigation costs; and (3) the monetary relief awarded is only 15% of the Plaintiffs' initial settlement demand and is less than what Defendants would have expected to spend bringing the case to trial. [Filing No. 309 at 22-24.] Based on these factors, Defendants propose an overall 5% reduction to the lodestar for Plaintiffs' limited success. [Filing No. 309 at 24.]

Plaintiffs dispute the assertion that Defendants had already reformed their practices and maintain that Defendants were still engaging in predatory conduct prior to the settlement. [Filing No. 314 at 11.] Plaintiffs argue that the large amount of money awarded under the settlement and the fact that the public will benefit from the result more than justify the amount of time spent by counsel on this case. [Filing No. 314 at 11-12.]

A district court, in its discretion, may "adjust [the fee] award in light of the plaintiff's 'level of success.'" *Spegon*, 175 F.3d at 557 (citing *Hensley*, 461 U.S. at 436). In a case involving related claims, the primary inquiry is "whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Spegon*, 175 F.3d at 557 (quoting *Hensley*, 461 U.S. at 434) (alteration in original). However, "the fee award need not be proportionate to the amount of damages a plaintiff actually recovers," *Spegon*, 175 F.3d at 558, and "[b]ecause damages awards do not reflect fully the public benefit advanced by civil rights

litigation," courts may consider those benefits in evaluating the level of success obtained, *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986).

Here, pursuant to the Consent Decree, Plaintiffs are deemed prevailing parties for purposes of this motion.  This is not a surprising stipulation, given that Plaintiffs secured both monetary damages and injunctive relief.  Although Defendants assert that they were already in the process of reforming their practices and they would have agreed to relief without spending so much money litigating the case, the Court will not merely accept Defendants' word as to these issues and notes that during the two years this litigation was ongoing, they did not in fact agree to such relief before costs were expended.  The monetary relief Plaintiffs received under the terms of the Settlement Agreement may be less than what Defendants would have expected to spend bringing the case to trial, but that of course is often the very reason defendants agree to settle in the first place, and therefore does not demonstrate a lack of success on the part of Plaintiffs.  Furthermore, the Court agrees that this case furthered a significant public interest by addressing allegedly predatory practices targeted at a certain portion of the population.  Defendants seemingly attempt to downplay the significance of the agreed injunctive relief by framing it as merely an agreement to follow the law.  But securing compliance with the law was the very point of this case and is an important goal of civil rights litigation in general.  To the extent that Plaintiffs' counsel expended more than a reasonable amount of time in furtherance of this result, the Court concludes that the discounts already applied above bring the fee down to a reasonable level, and no further reduction is necessary.

### E.  Adjusted Lodestar

Based on the foregoing, the Court will apply the following discounts to the fees of all attorneys and legal assistants: 20% for litigation tactics and discovery practices; 5% for

overstaffing; 5% for excessive time spent on internal communication; and 10% for non-compensable time spent defending against the counterclaims.  In addition, the Court will deduct an additional 5% from Mr. Brancart's fees only, to account for excessive time spent preparing memoranda.  Rather than applying these adjustments serially, the Court will add the percentages together and apply a single discount to each person's fee award, as stated in the following chart:

| Court's Adjusted Lodestar Calculation | | | | | |
|---|---|---|---|---|---|
| | Hourly Rate | Hours | Unadjusted Fee | Total Reduction Applied | Adjusted Fee |
| Christopher Brancart (Attorney) | $450 | 1,128.3 | $507,735.00 | 45% | $279,254.25 |
| Elizabeth Brancart (Attorney) | $450 | 113.6 | $51,120.00 | 40% | $30,672.00 |
| Liza Cristol-Deman (Attorney) | $400 | 42 | $16,800.00 | 40% | $10,080.00 |
| Sarah Dupree (Legal Assistant) | $110 | 695.8 | $76,538.00 | 40% | $45,922.80 |
| Cole Clark (Legal Assistant) | $95 | 39.7 | $3,771.50 | 40% | $2,262.90 |
| Ali Goss (Legal Assistant) | $95 | 27.6 | $2,622.00 | 40% | $1,573.20 |
| Christopher Clark (Attorney) | $350 | 621.5 | $217,525.00 | 40% | $130,515.00 |
| Abaigeal Musser (Attorney) | $250 | 4.2 | $1,050.00 | 40% | $630.00 |
| Rachel Craft (Legal Assistant) | $125 | 47.1 | $5,887.50 | 40% | $3,532.50 |
| Chase Haller (Attorney) | $225 | 262.5 | $59,062.50 | 40% | $35,437.50 |
| | | | | **Total:** | **$539,880.15** |

### F.  Costs and Expenses

Plaintiffs seek a total of **$54,347.94** in costs and expenses,[10] payable to Brancart & Brancart and to Goodin Abernathy.  [Filing No. 304-1 at 30-31.]  While Plaintiffs state in their motion that

---

[10] Specifically, Plaintiffs reference "costs" that are taxable under 28 U.S.C. § 1920 and other "expenses" that are generally included as part of the attorneys' fee award.  [Filing No. 304-1 at 30]; *see also Heiar v. Crawford Cty.*, 746 F.2d 1190, 1203 (7th Cir. 1984) ("[E]xpenses of litigation

itemizations of these costs are included in their submissions, [Filing No. 304-1 at 31], it is worth noting that, instead of providing an itemized list summarizing the costs and expenses incurred, Brancart & Brancart unhelpfully provided a 110-page collection of receipts and invoices purportedly representing $47,014.03 in costs, [Filing No. 304-7].  Plaintiffs include the itemized list in their reply, stating that the list "was referenced in and intended to be attached to plaintiffs' motion at Exhibit 4 but inadvertently omitted." [Filing No. 314-1 at 11; Filing No. 314-1 at 158-168.]  Mr. Clark provided an itemized list of his costs and expenses, totaling $7,333.91.  [Filing No. 304-1 at 31; Filing No. 304-10 at 5-6.]

Defendants make several objections to these costs, which the Court will address in turn.

1.   *Expert Fees*

Defendants argue that Plaintiffs have failed to justify the $14,875 paid in expert fees. [Filing No. 309 at 35-37.]  Specifically, Defendants assert that, because the submitted invoices do not detail the type of work each of Plaintiffs' experts performed or specify why such work was necessary, there is insufficient information upon which the Court can consider whether such costs were reasonable and necessary.  [Filing No. 309 at 35-36.]  In addition, Defendants argue that Plaintiffs cannot recover costs associated with expert Derek Peterson, because a review of his report shows that "his analysis is rudimentary and frankly, incorrect" and therefore "the report lacked value." [Filing No. 309 at 36-37.]

---

that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates . . . are part of the reasonable attorney's fee allowed by [§ 1988].").  Although this distinction is sometimes important, the Consent Decree provides for recovery of fees and costs, and Defendants do not dispute whether the claimed costs are of a recoverable type—they merely dispute whether the amounts incurred were reasonable and necessary.  Accordingly, the Court will use the term "costs" to refer to both costs and expenses.

In their reply, Plaintiffs assert that Defendants' objection is without merit because all of the experts' reports were provided to Defendants during discovery and such reports detail the work performed by each expert.  [Filing No. 314 at 20-21.]  Plaintiffs also argue that Defendants' belief that Mr. Peterson's conclusions were incorrect is not a basis for denying costs related to his compensation, because such beliefs could have been argued to the jury had this case proceeded to trial and address the evidentiary weight of his opinion, not its admissibility or necessity.  [Filing No. 314 at 21.]  Plaintiffs argue that Mr. Peterson's testimony would have helped the jury understand the complex business forms and transactions at issue.  [Filing No. 314 at 21.]

The Court agrees that Plaintiffs have not demonstrated that such costs were reasonable and necessary.  Although Plaintiffs provided copies of the expert reports to Defendants, and those reports are part of the record with respect to the fee motion, [Filing No. 309-43; Filing No. 314-1 at 187-257], Plaintiffs have offered no argument as to why such experts were necessary or why the fees that were paid by Plaintiffs were reasonable.  The Court will not review the reports to attempt to discern whether they were necessary given that Plaintiffs have not even tried to meet their burden as to this issue.  Given the lack of argument, Plaintiffs have not carried their burden, and the Court must disallow recovery of the costs associated with these experts.  Accordingly, **the Court will subtract from Plaintiffs' costs** the following: **$1,300 paid to James Colbert**; **$7,035 paid to Judith Fox**; **$3,420 paid to Derek Peterson**;[11] and **$3,300 paid to Anne Houghtaling**.[12]

---

[11] Defendants' disagreement with the accuracy of Mr. Peterson's report is not relevant to the Court's determination as to whether it was necessary for Plaintiffs to retain Mr. Peterson or whether the amount that Plaintiffs paid him was reasonable.

[12] To point out yet another example of the parties' submissions being unreliable, Ms. Houghtaling was not included in Plaintiffs' itemized list of costs under the "Experts" section.  [Filing No. 314-1 at 164.]  The Court will use the $3,300 listed on the invoice cited by Defendants.  [Filing No. 304-7 at 11.]

These costs, totaling $15,055, slightly exceed the costs disputed by Defendants, apparently due to another case of bad math.  Regardless, the Court will subtract the full amount of these expert costs.

2.   *Online Research and Document Costs*

Defendants argue that Plaintiffs' claimed costs of $10,006.29 for online legal research on Westlaw and document costs of $859.90 paid to PACER should be denied because Plaintiffs did not provide sufficient information—such as dates and subjects researched—to allow the Court to determine whether the charges are reasonable.  [Filing No. 309 at 37.]

Plaintiffs argue in their reply that although their itemization of costs was inadvertently omitted from their attachments to their original motion, Defendants had previously been provided with the itemized list.  [Filing No. 314 at 21.]  Plaintiffs assert that they only seek to recover $141.30 in PACER costs.  [Filing No. 314 at 22 n.11.]  In addition, Plaintiffs submit an itemized list of their research and redacted records from their Westlaw searches.  [Filing No. 314-1 at 162-63; Filing No. 314-1 at 259-77.]

The costs of online legal research are recoverable as part of an attorneys' fees award. *Haroco, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 38 F.3d 1429, 1440 (7th Cir. 1994). Defendants rely upon *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1031 (N.D. Ill. 2009), in which the court concluded that the plaintiff's itemizations for such costs, which "read simply as 'Lexis–Nexis' or 'Westlaw online legal research charges,' and provide[d] a date," were insufficiently detailed.  The court noted that neither it nor defense counsel were "responsible for combing through these various ledger entries and making educated guesses as to what legal research was performed on various dates, and whether the amount charged for that research is reasonable." *Id.*

The Court is not persuaded by Defendants' arguments or by *Dupuy*.  It can hardly be disputed as a reality of modern litigation that some amount of online legal research will be

42

necessary.  Plaintiffs have provided an itemized list explaining the subjects that were researched and the corresponding costs, and they have also provided corresponding Westlaw invoices.  [Filing No. 314-1 at 162-63; Filing No. 314-1 at 259-77.]  To require a more detailed explanation of research costs would be overly tedious both for litigants and for the Court.  Given the records provided, the Court finds that the claimed $10,006.29 in research costs is reasonable, especially relative to the number of parties and claims involved in this case, the overall nature of this litigation, and the size of the entire award sought for fees and costs.

As to the PACER charges, it is unclear where Defendants came up with the $859.90 total, and the Court disregards their objection based on that ambiguity alone.  However, the Court further notes that $141.30 paid to PACER for "Research re similar cases and/or involving same defendants," [Filing No. 314-1 at 163], is neither unnecessary nor unreasonable.  Accordingly, the Court will not subtract these expenses from Plaintiffs' award.

### 3.  Deposition Preparation Binders

Defendants argue that the $2,312.55 paid to FedEx Kinkos for binders that were used to prepare Plaintiffs for their depositions is not recoverable because it was not reasonable or necessary.  [Filing No. 309 at 38.]  Defendants point out that the contents of the binders were printed in English, despite the fact that most of the individual Plaintiffs were purportedly unable to read or write English.  [Filing No. 309 at 38.]

Apart from stating generally that the itemization of costs that was inadvertently omitted from the initial motion is attached to the reply and properly documents all of the claimed expenses, Plaintiffs do not specifically address the binders in their reply.  [*See* Filing No. 314 at 21-22.]

The list of itemized costs submitted by Plaintiffs shows costs for various "Deposition preparation binders," [Filing No. 314-1 at 160], but says nothing about why the expenses for these

binders were reasonable or necessary.  Without any argument from Plaintiffs as to that issue, the Court finds that Plaintiffs have not met their burden and **$2,312.55 will be subtracted from Plaintiffs' requested costs**.

*4.  Copying Costs*

Lastly, Defendants argue that the $2,920.10 paid to the Marion County Recorder for copying cannot be awarded because Plaintiffs failed to identify the documents that were copied, the number of copies made of each document, or the cost for each copy, and, therefore, the Court cannot determine whether the costs were reasonable and necessary.  [Filing No. 309 at 38.]

In their reply, Plaintiffs maintain that an itemized list of these copying charges was previously provided to Defendants.  [Filing No. 314 at 22 n.11.]  Plaintiffs state that the charges "were for real property records regarding defendants and their related entities."  [Filing No. 314 at 22 n.11.]  Again, Plaintiffs' itemized costs list is attached to their reply, as is their contract with the Marion County Recorder's Office.  [Filing No. 314-1 at 160; Filing No. 314-1 at 279-83.]

Neither the itemized expenses list nor the contract indicates what documents were copied, beyond the general description: "Real property records regarding defendants and related entities." [Filing No. 314-1 at 160.]  Plaintiffs make no argument concerning why such records were necessary or why the amount paid for the copies was reasonable, and, therefore, have failed to meet their burden.[13]  The Court will **subtract $2,920.10 from their requested costs**.

---

[13] It should be noted that, despite Plaintiffs' repeated reliance throughout their reply on the fact that certain records were previously provided to Defendants, such fact is entirely irrelevant and unhelpful to the Court's determination of a reasonable fee.  At this juncture, it is the Court—not the Defendants—that Plaintiffs need to persuade regarding the reasonableness of the fee and therefore it is the Court—not the Defendants—that must be provided with the relevant documents.

### 5.   *Costs Summary*

Based on the foregoing, the Court will subtract from Plaintiffs' claimed costs $15,055 for expert fees, $2,312.55 for deposition preparation binders, and $2,920.10 in copying costs. Plaintiffs initially sought to recover $54,347.94 total, comprising $7,333.91 for Goodin Abernathy and $47,014.03 for Brancart & Brancart.  [Filing No. 304-1 at 31.][14]  Because all of the challenged costs were claimed by Brancart & Brancart, the Court will subtract the disallowed costs from that firm's total.  Accordingly, **Plaintiffs are awarded $34,060.29 in costs: $26,726.38 for Brancart & Brancart and $7,333.91 for Goodin Abernathy**.

## IV.
### CONCLUSION

As both parties acknowledged in their briefing, and as the Supreme Court has explicitly stated, the determination of fees "should not result in a second major litigation."  *Fox*, 563 U.S. at 838.  This lengthy Order is certainly not the result of the parties in this case following that directive. Nevertheless, the Court concludes that, for the reasons detailed above, Plaintiffs did not meet their burden of demonstrating that their requested fee was reasonable.  Accordingly, the Court finds that the adjusted attorneys' fee of $539,880.15, as calculated above, as well as the costs in the amount of $34,060.29, are reasonable for this case.  Plaintiffs' Motion for Attorneys' Fees and Costs, [304],

---

[14] To the extent that Plaintiffs seek to add additional Westlaw costs expended by Brancart & Brancart "[i]n preparing the [fee] motion and reply," [Filing No. 314-1 at 18-19], the Court rejects this request.  First, while Westlaw invoice records are included, Plaintiffs did not provide additional information concerning the subjects that were researched on particular dates, like that which the Court used to justify the other legal research costs claimed.  Furthermore, in the Court's view, the additional $1,540.68 in research costs relating solely to the fee motion is excessive relative to the approximately $10,000 in legal research costs incurred for the remainder of the litigation.  Finally, the Court notes that the request for additional costs is not addressed in the reply brief itself, and instead is buried within Plaintiffs' attachment, which is not helpful to the Court and is not an advisable practice.

is **GRANTED** and **Defendants must pay a total of $573,940.44 in attorneys' fees and costs to Plaintiffs** as detailed in this Order.

Date: 5/7/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**